```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
------------------------------------------------

**GINA WILLIAMS,**

                Plaintiff,         18-cv-5912 (JGK)

    - against -                    ORDER

**NEW YORK CITY HOUSING AUTHORITY,
CAROLYN JASPER, CESAR GONZALEZ,
MATTHEW HOFFMAN, RODNEY DAVIS, AND
THELMA WATKINS,**

                Defendant.

------------------------------------------------

**JOHN G. KOELTL, District Judge:**

The Court has received the attached papers from the plaintiff.

**SO ORDERED.**

Dated:    New York, New York
            March 16, 2021

                                          /s/ John G. Koeltl
                                            John G. Koeltl
                                  United States District Judge

---------------------------------------------------------X
GINA WILLIAMS,

                          Plaintiff,          Civ. No. 18-cv-05912 (RGK)(RWL)

                 -against-

THE NEW YORK CITY HOUSING AUTHORITY,
CAROLYN JASPER, CESAR GONZALEZ,
MATTHEN HOFFMAN, RODNEY DAVIS,
THELMA WATKINS,



                          Defendants.
---------------------------------------------------------X

## Plaintiff's response to defendant NYCHA's Declaration in Opposition to Plaintiff's Gina Williams Motion for a Preliminary Injunction

I am the Pro-Se plaintiff in the above action. I submit this affirmation under the penalty of perjury in response to defendant NYCHA'S attorney Jane Lippman declaration.

1. Defendant NYCHA is a recipient of federal funds from the US Department of Housing and Urban Development and Urban Development, NYCHA must comply with all constitutional statutory Laws.

2. Defendant NYCHA board panel is receiving federal funds, this makes NYCHA board panel a federal tribunal and court.

3. Defendant NYCHA's board panel cannot simply rubber stamp administrative decisions, they are expected to give "due weight" to these proceedings and must engage in an independent review of the administrative record and make a determination based on a preponderance of evidence".

4. Defendant NYCHA's board panel disregard and failure to comply with constitutional procedures is a violation of 42 U.S.C. § 1983.

5.  In view of the Board panel failure to comply with constitutional procedures on plaintiff's decision and the NYCHA board panel followed constitutional procedures on defendant Watkin's decision, this raises suspicion on whether plaintiff's decision was reviewed by the board panel.

6.  Due to the fact that the NYCHA'S Board Panel failed to sign the decision. I am respectfully requesting the court to give an order to NYCHA's board panel to submit an affidavit stating they reviewed plaintiff's general trial decision.

7.  In the case, Huber v. State of Alaska, Department of Corrections, Supreme Court 2018, states in the absence of any statement of reasons for a disciplinary decision or any indication of the evidence supporting it. Huber could not know which evidence " formed the basis of the hearing officer's guilty finding" or whether the hearing officer applied the regulation at issue. This precludes meaningful review of the hearing officer's decision. Absence of a Wolff statement prejudiced Huber's right to a fair adjudication.

8.  Defendant NYCHA board panel unconstitutional decision clearly prejudices plaintiff right to fair adjudication.

9.  Plaintiff is currently experiencing continuing acts of discrimination such as NYCHA's Human Resources department not granting plaintiff's Family medical leave act even though plaintiff submitted all document since December 2020. Plaintiff recently sent an email to Human resources on March 8, 2021 and they refuse to respond. Plaintiff is witnessing her subordinates and co- workers receive their FMLA approvals in a timely manner. NYCHA human resources is supposed to Respond to the FMLA within five days.

10. NYCHA Human resources department and Administrative Neagia Drew still have not rein burst plaintiff for her vehicle being vandalized on NYCHA's property during working hours. Plaintiff has submitted all documents. It has been one year March 2020 since the request for reimbursement. Assistant Director of Human Resources redirect plaintiff to Administrator Neagia Drew and Ms. Drew redirected back to Human resources.

Dated: Queens, New York
March 12, 2021

Respectfully submitted

*[signature]*

Gina Williams
Pro Se Plaintiff
146-17 182nd Street
Springfield Gardens NY 11413
Tel:(347) 886-7802

C. Jane Lippman Esq. Via (email)
Matthew Hromadka, Esq. Via (email)

---------------------------------------------------------x
GINA WILLIAMS,

        Plaintiff,   Civ. No. 18-cv-05912 (RGK)(RWL)

 -against-

THE NEW YORK CITY HOUSING AUTHORITY,
CAROLYN JASPER, CESAR GONZALEZ,
MATTHEN HOFFMAN, RODNEY DAVIS,
THELMA WATKINS,

        Defendants.
---------------------------------------------------------x



## **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY INJUNCTION MOTION**

1. Defendant NYCHA is currently under a consent decree to follow constitutional due process procedures before evicting their tenants. See- ESCALERA v. NEW YORK CITY HOUSING AUTHORITY, 425 F. 2d 853, (2nd Cir. 1970)

2. Defendant NYCHA is currently under a consent decree, not to engage in deceptive practices, thru information and belief plaintiff states the NYCHA Board Panel did not review her general trial decision. See- US v. NEW YORK CITY HOUSING AUTHORITY, 347 F. sup 3d 182.

3. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on. See- GOLDBERG v. KELLY, 397 US 254.

4. Under most circumstances, judicial review of an administrative determination made after a hearing required by law, and at which evidence was taken, is limited to whether that determination is Supported by substantial

evidence. See- Matter of BLAZE V. KLEIN, 68 ad 3D 749, (2009).

5.     "A 42 U.S.C. § 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." See- ANNIS B. CITY of WESTCHESTER, 136 F.3d 239, (2d Cir. 1998)

## Conclusion

For the reasons set forth herein, Plaintiff respectfully request that the Court grant Plaintiff's Motion for a Preliminary Injunction.

Dated: Queens, New York
       March 12, 2021

Respectfully Submitted,

*Gina Williams*
Gina Williams
Pro Se Plaintiff
146-17 182nd Street
Springfield Gardens NY 11413
Tel: (347) 886-7802

C: Jane E. Lippman Esq. Via (email)
   Matthew Hromadka, Esq. Via (email)

**BOB HUBER, Appellant,**

v.

**STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, Appellee.**

Supreme Court No. S-16190, No. 7284.

**Supreme Court of Alaska.**

August 31, 2018.

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Superior Court No. 3PA-15-01336 CI, Gregory Heath, Judge.

Jon Buchholdt, Buchholdt Law Office, and Christopher V. Hoke, Hoke Law, Anchorage, for Appellant.

John K. Bodick and Matthias R. Cicotte, Assistant Attorneys General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee.

Susan Orlansky, Reeves Amodio, LLC, Anchorage, for Amicus Curiae ACLU of Alaska Foundation. Cynthia Strout, Anchorage, for Amicus Curiae Alaska Association of Criminal Defense Lawyers.

Before: Stowers, Chief Justice, Maassen, Bolger, and Carney, Justices. [Winfree, Justice, not participating.]

*This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

# OPINION

BOLGER, Justice.

# I. INTRODUCTION

Federal law requires that a prison disciplinary decision must include a written statement of the evidence relied on and the reasons for the decision. In this case, the superior court affirmed a decision finding a prisoner "guilty" without any further explanation. The court reasoned that the prisoner was not prejudiced because the disciplinary hearing was recorded, and the prisoner was able to adequately explain his version of the evidence in his appeal. But we conclude that the written disciplinary decision or the audio recording must ordinarily include a specific statement satisfying federal law: a mere finding of "guilty" is generally insufficient. We therefore reverse the superior court's decision affirming the decision of the Department of Corrections.

# II. FACTS AND PROCEEDINGS

Bob Huber, a former prisoner at Goose Creek Correctional Center, was involved in an incident in the prison dining hall on October 11, 2014. The incident report states that Huber stared at a correctional officer in an intimidating manner, dropped food on the floor, yelled profanity at the officer, and refused to provide his inmate number when asked. The officer cited him under 22 Alaska Administrative Code (AAC) 05.400(c)(15), which prohibits prisoners from "[e]ngaging in a group or individual demonstration or activity that involves throwing of objects, loud yelling, loud verbal confrontation, or pushing, shoving, or other physical contact that disrupts or interferes with the orderly administration of the facility."[1]

A disciplinary hearing was held on October 21. At the hearing, the hearing officer read the correctional officer's description of the incident aloud and asked Huber how he would like to plead. Huber pleaded not guilty. He testified that the incident report misrepresented what had occurred and that he had been attempting to defend an inmate who was being treated

Case 1:18-cv-05912-JGK-RWL   Document 140   Filed 03/16/21   Page 8 of 12

unfairly. After Huber finished testifying, the hearing officer stated that she was "going to find [Huber] guilty." She then imposed a penalty of 15 days of punitive segregation. Following the hearing, the hearing officer issued a written disciplinary decision on the standard decision form. The decision form includes a section for enumerating the "reasons, evidence considered and specific facts" upon which a guilty finding is based. The hearing officer left this portion of the form blank.

Huber appealed the decision to the superintendent of Goose Creek Correctional Center, explaining his version of events and arguing that the cited offense in the correctional officer's original incident report had not been properly filled out. The superintendent affirmed the guilty finding and the penalty.

Huber appealed to the superior court, raising the issue of a due process violation for the first time. Huber noted that Department of Corrections (DOC) regulations require a written disciplinary decision to include "a statement of the evidence relied upon and the specific facts found to support the disciplinary tribunal's decision."[2] He further argued that a hearing officer's failure to include this information in the report made it impossible for the superintendent to conduct meaningful review of the officer's findings. Accordingly, he concluded that the hearing officer's decision violated his right to due process.[3] The State countered that Huber had waived his due process argument by failing to assert it in his appeal to the superintendent. It further argued that even if Huber's due process claim was preserved, he had failed to demonstrate that the lack of written findings had prejudiced his ability to defend himself during the prison disciplinary process.[4]

The superior court affirmed the disciplinary decision. The court first concluded that Huber had forfeited his due process argument by failing to raise the issue during the disciplinary appeal process. The court further held that even if Huber had not forfeited the issue, he had failed to show that he had been prejudiced as a result of the lack of written findings. Huber appeals.

## III. DISCUSSION

### A. Huber Did Not Forfeit His Due Process Claim By Failing To Raise It During The Administrative Appeal.

The superior court concluded that "[b]ecause Huber's due process argument was not raised during the administrative proceedings below, it is waived on appeal." Huber responds that he did not need to explicitly raise this issue during the administrative appeal process in order to preserve it. "We review de novo whether a party has waived a claim on appeal."[5]

We recently addressed the effect of a prisoner's failure to raise constitutional claims during the DOC disciplinary appeals process in *Walker v. State, Department of Corrections*.[6] The appellant in *Walker* argued that DOC violated his right to due process by refusing to allow him to call witnesses during a disciplinary hearing.[7] The superior court concluded that the appellant had waived this argument by failing to raise it in his administrative appeal.[8] We reversed this decision and concluded that the appellant had not forfeited this argument.[9] We first noted that no statute or regulation mandates issue exhaustion in Alaska.[10] Then we concluded that several characteristics of the prison disciplinary process counseled against imposing a judicially created issue exhaustion requirement for disciplinary appeals.[11] Accordingly, we held that "prisoners who fail to raise their constitutional claims during the administrative appeal process do not necessarily forfeit those claims."[12]

The forfeiture issue in Huber's appeal is not meaningfully distinct from that in *Walker*. Like the appellant in *Walker*, there is no evidence that Huber received notice that failure to raise an issue during the administrative appeal process would result in forfeiture.[13] And Huber was similarly required to file his administrative appeal "within three working days of receipt of the written disciplinary decision," and prepared his appeal without legal assistance.[14] Finally, prison superintendents possess no "special expertise to address [the] constitutional claim[]" that Huber raises on appeal.[15] Accordingly, we conclude that Huber did not forfeit his due process claim by failing to raise it during the disciplinary appeals process.[16]

### B. The Hearing Officer's Failure To Provide A Statement Of The Reasons For The Decision Or The Evidence Supporting It Was A Violation Of Huber's

## Right To Due Process.

In *Wolff v. McDonnell*, the United States Supreme Court held that due process requires factfinders in a prison disciplinary proceeding to produce "a 'written statement . . . as to the evidence relied on and reasons' for the disciplinary action."[17] A year after *Wolff*, we accordingly stated in *McGinnis v. Stevens* that the Alaska Constitution entitles prisoners "to all due process rights enunciated in *Wolff*," including the written statement requirement.[18] And we went further and held that the Alaska Constitution provides greater due process protections than the U.S. Constitution. It entitles a prisoner not simply to a written summary statement, but "to have *the entire hearing recorded* for purposes of administrative appeal and potential further appeal to the superior court."[19]

Huber first contends that simply providing a verbatim record of his disciplinary proceeding misconstrues our holding in *McGinnis* and cannot satisfy the *Wolff* written statement requirement. However, we recently rejected this same argument in *Pease-Madore v. State, Department of Corrections*.[20] In that case, a prisoner appealed from three disciplinary decisions in which the hearing officer did not produce a *Wolff* written statement.[21] We concluded that the *McGinnis* verbatim record requirement "serve[s] the same purposes as the [*Wolff*] written statement," and in fact "may furnish a more inclusive record of the proceedings" than a written statement.[22] Accordingly, we held that an audio recording of a disciplinary hearing can satisfy *Wolff*'s requirement for a written statement.[23]

But we also noted that, although an audio recording of a disciplinary proceeding *may* satisfy the *Wolff* requirement, it will not *necessarily* do so.[24] We reasoned that a verbatim record "fulfills th[e] purpose" of the *Wolff* requirement "if the recording includes information about the evidence relied on and the reasons for the decision."[25] However, we also stated that, "[i]f the evidence relied on and reasons for the disciplinary action are not identified in the recording, then there is indeed a qualitative difference between the information made available through a written statement as opposed to a recording."[26] We concluded that the audio recordings of the proceedings at issue provided sufficient information to satisfy the *Wolff* requirement only when considered in conjunction with the hearing officers' written reports.[27] *Pease-Madore* thus establishes that it is the substance of the explanation that matters, rather than the manner in which it is preserved. In other words, a prisoner's right to due process is satisfied when the written disciplinary decision, audio recording, or both in conjunction satisfy the *Wolff* requirement — that is, when they provide "information about the evidence relied on and the reasons for the decision."[28]

Huber next contends that the hearing officer's decision in his disciplinary hearing did not satisfy the *Wolff* requirement, and thereby violated his right to due process. "Whether an inmate has received procedural due process is an issue of constitutional law that we review de novo."[29]

"One question left open by the *Wolff* decision is how specific a *Wolff* statement should be."[30] In *Pease-Madore*, we concluded that verbatim records of a proceeding coupled with disciplinary decisions that incorporated detailed incident reports satisfied the *Wolff* requirement.[31] Thus, in at least some instances, it is sufficient for a hearing officer to simply identify the evidence supporting a decision.[32]

In contrast to the disciplinary decisions at issue in *Pease-Madore,* the record of Huber's disciplinary decision contains no information about the evidence relied on or the reasons for the hearing officer's decision. At the disciplinary hearing, the hearing officer simply heard Huber's testimony and stated that she was "going to find [Huber] guilty" without explaining the basis for her decision. And the written disciplinary decision similarly indicates that Huber is "guilty" without providing further elaboration. The written decision form also fails to include any language "incorporating and agreeing with the incident report,"[33] and the space on the form for "reasons, evidence considered, and specific facts upon which [the] finding is based" was not filled out.

In *Saenz v. Young,* the Seventh Circuit considered a disciplinary proceeding in which a prisoner was found guilty of attempted battery.[34] The court stated that a disciplinary decision without specific findings of fact may, in some instances, satisfy the *Wolff* statement requirement.[35] However, the *Saenz* court also cautioned that "[o]rdinarily a mere conclusion that the prisoner is guilty will not satisfy this requirement."[36] We agree. There may be some very simple proceedings in which a guilty verdict alone would suffice to satisfy the *Wolff* statement requirement.[37] But in most instances, the absence

of any information regarding the basis for a hearing officer's decision will make it difficult for a prisoner to obtain meaningful review on appeal.[38] Although it might be possible to infer a hearing officer's reasoning process where the charge and evidence are straightforward, there is always a possibility that the officer misunderstood the elements of a charge.[39] And there is little cost associated with requiring a hearing officer to identify what evidence is relevant, even when the answer seems obvious.[40] Where charges and evidence are straightforward, preparing a sufficient *Wolff* statement should not be unduly burdensome.

Here, we hold that the hearing officer's bare conclusion that Huber was guilty does not satisfy the *Wolff* statement requirement. Without any statement of the reasons for the decision or the supporting evidence, it is impossible for a reviewing body to determine whether the hearing officer correctly applied the regulation at issue.[41] Furthermore, it is not clear whether the hearing officer based her guilty verdict on the incident report, Huber's testimony, or a combination of the two.[42] Accordingly, we hold that Huber's right to due process was not satisfied by the disciplinary decision and audio recording.

Lastly, we note that DOC regulations require a disciplinary decision to include "a statement of the disciplinary tribunal's adjudicative and dispositive decisions and the reasons for those decisions, including a statement of the evidence relied upon and the specific facts found to support the disciplinary tribunal's decision."[43] At this time, we do not hold that a hearing officer's failure to follow this regulation necessarily constitutes a due process violation.[44] We nevertheless expect that DOC will comply with its regulations in the future.

## C. The Violation Of Huber's Right To Due Process Was Prejudicial.

In order to reverse a disciplinary decision, we must find both that a constitutional right was violated and that the violation prejudiced the inmate's right to a fair adjudication.[45] Whether a party has suffered prejudice is reviewed de novo.[46]

Huber first argues that he need not show that his right to a fair adjudication was prejudiced. But we recently considered a similar argument in *Pease-Madore*, and concluded that it is irreconcilable with both our precedent and the statute governing disciplinary appeals.[47]

Huber also argues that he nevertheless demonstrated prejudice. He contends that "if the record is insufficient . . . then it would have been impossible for the Superintendent to determine that the findings supported the decisions reached."

In the absence of any statement of reasons for a disciplinary decision or any indication of the evidence supporting it, Huber could not know which evidence "formed the basis of the hearing officer's guilty finding" or whether the hearing officer correctly applied the regulation at issue.[48] This precludes meaningful review of the hearing officer's decision. Accordingly, we conclude that the absence of a *Wolff* statement prejudiced Huber's right to a fair adjudication.

## IV. CONCLUSION

We REVERSE the superior court's decision affirming the decision of the Department of Corrections. DOC may elect to hold a new hearing. Alternatively, the DOC hearing officer may amend the decision to comply with the requirements set out in this opinion.

[1] Violating this provision is a high-moderate infraction. 22 AAC 05.400(c)(15) (2018).

[2] 22 AAC 05.475(a)(3); *see also Pease-Madore v. State, Dep't of Corr.*, 414 P.3d 671, 678 (Alaska 2018); *Brandon v. Dep't of Corr.*, 865 P.2d 87, 91 (Alaska 1993).

[3] In his points on appeal in the superior court, Huber also alleged that the hearing officer relied on inadmissible evidence to reach the adjudicative decision. But his brief before the superior court did not address this issue, and Huber does not raise it on appeal.

[4] *See* AS 33.30.295(a) ("A prisoner may obtain judicial review by the superior court of a final disciplinary decision by the [DOC] only if the prisoner alleges specific facts establishing a violation of the prisoner's fundamental constitutional rights that prejudiced the prisoner's right to a fair adjudication.").

[5] *Pease-Madore*, 414 P.3d at 674 (quoting *Sellers v. Kurdilla*, 377 P.3d 1, 13 (Alaska 2016)).

[6] 421 P.3d 74 (Alaska 2018).

[7] *Id.* at 78.

[8] *Id.*

[9] *Id.* at 82, 83.

[10] *Id.* at 79.

[11] *Id.* at 79-81.

[12] *Id.* at 81.

[13] *Id.* at 79-80. DOC regulations do not provide such notice. *See* 22 AAC 05.480.

[14] *See* Walker, 421 P.3d at 80; *see also* 22 AAC 05.480(b) (establishing time limit for filing appeal).

[15] *Walker*, 421 P.3d at 80.

[16] We also note that Huber could not have raised the due process concern during the disciplinary hearing since his concern stems from the result of that hearing. *See id.* at 12 ("[W]e take note of the fact that Walker brought his constitutional claim to DOC's attention during the initial stages of the disciplinary process.").

[17] 418 U.S. 539, 564 (1974) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

[18] 543 P.2d 1221, 1236 (Alaska 1975).

[19] *Id.* (emphasis added); *see also Pease-Madore v. State, Dep't of Corr.*, 414 P.3d 671, 673 (Alaska 2018) ("In *McGinnis* . . . this court held that due process under the Alaska Constitution requires a `verbatim record of the [disciplinary] proceedings.'" (alteration in original) (quoting *McGinnis*, 543 P.2d at 1236)).

[20] 414 P.3d at 675.

[21] *Id.* at 673-74.

[22] *Id.* at 676.

[23] *Id.* at 675-77.

[24] *Id.* at 676-77.

[25] *Id.* at 676.

[26] *Id.*

[27] *See id.* at 677-78.

[28] *Id.* at 676.

[29] *Id.* at 674 (quoting *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

[30] Michael A. Guzzo, *The Written Statement Requirement of* Wolff v. McDonnell: *An Argument for Factual Specificity*, 55 FORDHAM L. REV. 943, 948-49 (1987); *see also* 2 MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS § 10:49, at 586 (5th ed. 2017) ("In general, beyond its statement regarding situation[s] involving personal or institutional safety, the Supreme Court has not specified the contents of the required record other than that it should include the evidence relied on and the reasons for the disciplinary action.").

[31] *Pease-Madore*, 414 P.3d at 677-78; *see id.* at 677 ("All three disciplinary decisions include the phrase `WOR as written,' which appears to denote the incorporation of and agreement with the incident reports."); *see also DeRemer v. State Dep't of Corr.*, No. S-16194, 2018 WL 2077847, at *3 (Alaska May 2, 2018) ("Here, the disciplinary decision stated that DeRemer's conviction was based on `the documentation of the written report.'").

[32] Several courts have reached similar conclusions. *See, e.g., Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987); *Brown v. Frey*, 807 F.2d 1407, 1412 (8th Cir. 1986). However, other courts have interpreted *Wolff* to require specific written findings resolving any factual disputes. *See, e.g., Thompson v. Lane*, 551 N.E.2d 731, 736 (Ill. App. 1990); *State ex rel. Meeks v. Gagnon*, 289 N.W.2d 357, 363 (Wis. App. 1980). *See generally* Guzzo, *supra* note 30, at 943 n.6 (listing cases).

[33] *See Pease-Madore*, 414 P.3d at 678.

[34] 811 F.2d 1172, 1173 (7th Cir. 1987).

[35] *See id.* at 1174.

[36] *Id.*

[37] Cf. *Dyson v. Kocik*, 689 F.2d 466, 468 (3d Cir. 1982) (concluding that if the charge addressed in a disciplinary decision were simpler, "the generalized finding of 'guilty of misconduct as written' would have met the minimum requirements of procedural due process").

[38] See *Saenz*, 811 F.2d at 1174 ("Where the charge is complex and the [disciplinary tribunal] fails to explain its findings, the reviewing court will find it difficult and maybe impossible to determine whether the [tribunal] on the one hand found facts showing that the prisoner really was guilty of the charge, or on the other hand based the finding of guilt on erroneous legal premises.").

[39] See *Thompson v. Lane*, 551 N.E.2d 731, 737 (Ill. App. 1990) (holding that "a statement of reasons should be sufficient to enable a reviewing body to determine whether [punishment has been imposed] for an impermissible reason or for no reason at all").

[40] Cf. *Wolff v. McDonnell*, 418 U.S. 539, 565 (1974) ("[W]e perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.").

[41] See 22 AAC 05.400(c)(15). The incident report indicated that Huber had violated the regulation by engaging in a "demonstration or activity that involves throwing of objects." The disciplinary decision did not explain how he had violated the regulation.

[42] Cf. *Saenz*, 811 F.2d at 1174 (characterizing a disciplinary tribunal's statement that its decision was "based on all evidence" or "all evidence presented" as "the antithesis of specifying the evidence relied on").

[43] 22 AAC 05.475(a)(3).

[44] See *Pease-Madore v. State, Dep't of Corr.*, 414 P.3d 671, 678 (Alaska 2018).

[45] AS 33.30.295(b)(1).

[46] *Pease-Madore*, 414 P.3d at 674.

[47] *Id.* at 678; see also AS 33.30.295(b).

[48] *Walker v. State, Dep't of Corr.*, 421 P.3d 74, 82 (Alaska 2018); cf. *Brandon v. Dep't of Corr.*, 865 P.2d 87, 91 (Alaska 1993) (noting that a disciplinary tribunal's failure to prepare written findings makes it "difficult for an inmate to know exactly what formed the basis for the conviction, and to obtain meaningful review").

Save trees - read court opinions online on Google Scholar.