**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**GINA WILLIAMS,**

                    **Plaintiff,**             **18-cv-5912 (JGK)(RWL)**

        **- against -**                        **MEMORANDUM OPINION AND**
                                               **ORDER**
**NEW YORK CITY HOUSING AUTHORITY,**
**CAROLYN JASPER, CESAR GONZALEZ,**
**MATTHEW HOFFMAN, RODNEY DAVIS, AND**
**THELMA WATKINS,**

                    **Defendants.**
────────────────────────────────
**THELMA WATKINS,**

            **Cross-Claim Plaintiff,**

        **- against -**

**NEW YORK CITY HOUSING AUTHORITY,**

            **Cross-Claim Defendant.**
────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Gina Williams, proceeding <u>pro</u> <u>se</u>, has

brought this action against the New York City Housing Authority

("NYCHA"), as well as Carolyn Jasper, Cesar Gonzalez, Matthew

Hoffman, Rodney Davis, and Thelma Watkins, in their personal and

official capacities as employees of NYCHA, alleging

discrimination, hostile work environment, and retaliation on the

basis of race and gender, in violation of the Fourteenth

Amendment of the United States Constitution, Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, <u>et</u> <u>seq.</u> ("Title

VII"), 42 U.S.C. §§ 1981, 1983, and 1985 ("Section 1981,"

1

"Section 1983," and "Section 1985," respectively), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. (the "NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "NYCHRL").[1]  The plaintiff has also brought a claim for First Amendment retaliation pursuant to Section 1983.  Although the defendant Thelma Watkins is a NYCHA employee, NYCHA withdrew its representation of Watkins due to a conflict of interest, and Watkins filed a cross-claim against NYCHA.

NYCHA, Jasper, Gonzalez, Hoffman, and Davis (together "NYCHA Defendants") and Watkins have all moved for summary judgment dismissing the plaintiff's claims.  After the summary judgment motions were fully briefed, the plaintiff filed a letter, seeking a preliminary injunction. The plaintiff's preliminary injunction raises new claims, not found in the Second Amended Complaint ("SAC"), alleging that the process of the plaintiff's demotion violated her due process rights. For the reasons that follow, defendant Watkins' motion for summary judgment is **GRANTED**, the NYCHA Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**, and the plaintiff's request for a preliminary injunction is **DENIED**.

---

[1]  Although the plaintiff is proceeding pro se for purposes of this motion, the plaintiff had counsel, on a limited appearance basis, for purposes of defending the plaintiff's deposition and taking depositions. ECF Nos. 44, 45, 129, 130.

2

**I.**

The following facts are taken from the SAC, the parties'
Local Rule 56.1 submissions, declarations, and exhibits, and are
undisputed for the purposes of these motions unless otherwise
noted.[2]

**A.**

The plaintiff, an African-American female, has been an
employee of NYCHA since 1992, and during the relevant period she
held the title of Resident Buildings Superintendent. NYCHA
Defs.' 56.1 Stmt. ¶ 7; SAC ¶ 5. NYCHA is a public authority,
created under the New York Public Housing Law, to provide safe,

_____

[2] Both the NYCHA Defendants and Watkins filed Rule 56.1 Statements.  The
plaintiff filed a Response to the NYCHA Defendants' Rule 56.1 Statement and a
document, labeled as an "Affidavit" in response to Watkins' Rule 56.1
Statement.  The plaintiff's responses did not address or dispute several of
the statements in either the NYCHA Defendants' Rule 56.1 Statement or
Watkins' Rule 56.1 Statement.  Instead, the plaintiff asked that the Court
conduct an "assiduous review" of the record. As Watkins notes, the
plaintiff's Rule 56.1 Response to the Watkins' Rule 56.1 Statement is not
notarized, and appears to be unsworn, and therefore does not qualify as an
affidavit.  Further, the plaintiff has attached several exhibits, that the
defendants argue were not introduced in discovery, are unauthenticated, and
inadmissible. The defendants have suggested that, because the plaintiff has
either not disputed, or has not provided supporting, admissible evidence to
support her disputes with statements in the Rule 56.1 Statements, and because
the plaintiff has brought several lawsuits in federal court previously, the
Court should decline the request to conduct an "assiduous review" of the
record and accept the Rule 56.1 Statements as fully admitted. Although the
Court of Appeals has instructed that facts in Rule 56.1 Statements that are
uncontested may be deemed admitted as a matter of law, Gubitosi v. Kapica,
154 F.3d 30, 31 & n.1 (2d Cir. 1998), district courts have broad discretion
to determine whether to overlook a party's failure to comply with Rule 56.1
and "to conduct an assiduous review of the record even where one of the
parties has failed to file such a statement." Holtz v. Rockefeller & Co., 258
F.3d 62, 73 (2d Cir. 2001).  Moreover, the Court has an independent
obligation to assure that statements in a Rule 56.1 Statement are supported
in the record. See id. at 74. A careful review is appropriate in this case.
See, e.g., Liverpool v. Davis, 442 F. Supp. 3d 714, 723 (S.D.N.Y. 2020);
Hayes v. Cty. of Sullivan, 853 F. Supp. 2d 400, 406 (S.D.N.Y. 2012).

decent public housing for persons of low income in New York
City.  N.Y. Pub. Hous. Law §§ 2, 401. NYCHA has an "Equal
Opportunity Policy" that provides equal opportunities for all
qualified applicants and staff and prohibits discrimination on
the basis of race and gender in all terms and conditions of
employment, including work assignments, salary, performance
evaluations, and promotions. NYCHA Defs.' 56.1 Stmt. ¶ 10. The
Policy also prohibits retaliation for complaining about unlawful
discrimination. Id.

During the relevant period, Jasper, a black female, was the
Borough Director in NYCHA Queens-Staten Island Property
Management Department. NYCHA Defs.' 56.1 Stmt. ¶¶ 2, 22.
Gonzalez was the Regional Asset Manager, Hoffman was an
Administrator, and Davis was the Deputy Director, all in the
NYCHA Queen-Staten Island Property Management Department. Id.
¶¶ 3-5. Watkins, a black female, worked as the Housing Manager
of Pomonok Houses ("Pomonok"), and was the plaintiff's direct
supervisor beginning around May 2017. NYCHA Defs.' 56.1 Stmt.
¶¶ 6, 32; Watkins' 56.1 Stmt. ¶¶ 4, 16-18. Prior to Watkins
being appointed the Housing Manager of Pomonok, the plaintiff
was supervised by Xenia Rivera. NYCHA Defs.' 56.1 Stmt. ¶ 32.

After commencing employment with NYCHA in 1992 and passing
a civil service exam in 2004, the plaintiff was appointed to be
the Assistant Resident Buildings Superintendent of Astoria

4

Houses; and, after passing another civil service exam in 2013, the plaintiff was then appointed to be a Resident Buildings Superintendent of Beach 41st Street-Beach Channel Drive Houses ("Beach 41st"). NYCHA Defs.' 56.1 Stmt. ¶¶ 12-15.

In 2012, the plaintiff filed a lawsuit in the United States District Court for the Eastern District of New York, against NYCHA, Jasper, and three other NYCHA employees, alleging discrimination, retaliation, and hostile work environment, based on race and gender.  The District Court granted summary judgment for the defendants on all claims, and the judgment was affirmed by the Court of Appeals for the Second Circuit. See Williams v. New York City Housing Authority, Kevin Mcnerny, Ryan Forde, Caroyln Japser, and Thomas Puleo, 2013 WL 12080915, at *7 (E.D.N.Y. Aug. 7, 2013), aff'd, 572 Fed. App'x 23 (2d Cir. 2014).

In early 2016, a Residential Buildings Superintendent position at Pomonok became vacant. NYCHA Defs.' 56.1 Stmt. ¶ 16. Jasper testified that, because there was no civil service list, Jasper had the authority to fill the Superintendent vacancy by transferring laterally a Superintendent at another facility into the position. NYCHA Defs.' 56.1 Stmt. ¶ 17; Jasper Dep. 17-18. Jasper testified that she considered the employee's performance, experience, and potential hardships from the transfer, and decided to transfer the plaintiff from Beach 41st to Pomonok.

NYCHA Defs.' 56.1 Stmt. ¶ 18-21; Jasper Dep. 28-29, 38. Jasper testified that the plaintiff had overseen a "major modernization" contract previously at Astoria House, a "fairly large" development like Pomonok, and that the plaintiff did a "fairly good job." NYCHA Defs.' 56.1 Stmt. ¶ 19; Jasper Dep. 31. Jasper testified that she was "impressed with Gina Williams' performance" and that the plaintiff had "the capability, skills, and experience to work at Pomonok and with the staff to improve conditions and morale at the location." Jasper Dep. 19-21, 39-40, and errata sheet.

Jasper testified that whenever she transferred Superintendents, she always discussed the transfer with them first, and it is undisputed that Jasper and the plaintiff discussed the plaintiff's lateral transfer to Pomonok.  Williams Dep. 57-58, 75-78; Jasper Dep. 19-20.  The plaintiff testified that when Jasper discussed the transfer with the plaintiff, Jasper told the plaintiff that she was being transferred because the plaintiff "was doing a good job at Beach 41st." Williams Dep. 76-77.  The plaintiff acknowledged in her testimony that the transfer to Pomonok was a lateral transfer, with the same salary, level of seniority, and title, that the plaintiff previously had at Beach 41st. Williams Dep. 57-58.  The parties dispute whether and to what degree Jasper explained the difficulties and defects Pomonok faced, when Jasper and the

6

plaintiff discussed the transfer.  Pl.'s 56.1 Resp. ¶ 8; Jasper Dep. 20-21.

The plaintiff alleges that the transfer was arbitrary, because she was the Superintendent with the "least seniority" within the borough and had less than five years of experience. SAC ¶ 6; Williams Dep. 79-80. However, the plaintiff admitted that she has never seen a NYCHA policy stating that a Superintendent could only be transferred after a certain number of years of experience, the plaintiff's union never confirmed such a rule existed, and the plaintiff's understanding was based on a discussion with an unnamed administrator. Williams Dep. 80, 87, 89-90.  The plaintiff has also challenged the NYCHA Defendants' assertion that Jasper had authority to transfer the plaintiff to Pomonok, arguing that NYCHA has a policy requiring that all transfers be "posted for promotion" and that "a notice of vacancy must be posted and [E]qual [O]pportunity [E]mployer must apply." Pl.'s 56.1 Resp. ¶¶ 6-7. The plaintiff has submitted a "Resident Superintendent Job Posting Notice" from October 2020 as an exhibit to support this assertion. Pl.'s 56.1 Resp. Ex. E. This notice states that it is "open as a promotional opportunity only" and "not open on a direct transfer (lateral) basis."[3] Id.

---

[3]  As the defendants note, the plaintiff's Exhibit E was not produced in discovery and was produced after the discovery period closed.

The plaintiff has testified and alleged that the transfer involved gender bias, because there were qualified male Superintendents that could have been transferred to Pomonok: Juan Mercado and Benjamin Costa.  Williams Dep. 83, 85-86. The plaintiff's understanding that Mercado and Costa were qualified was based on Jasper's comments at borough meetings. Williams Dep. 86.  Jasper testified that she may have considered Mercado, but because Mercado was the Superintendent at Ravenswood Houses—a large development—if Mercado was moved, then Jasper would again need a replacement for a large development. Jasper Dep. 33, 45.  Jasper testified that Costa—the Superintendent of Astoria House—was overseeing a "major modernization" at Astoria and that Costa was "working through" some issues. NYCHA Defs.' 56.1 Stmt. ¶ 25; Jasper Dep. 29-30, 32. Jasper also testified that there was another female candidate who was "doing fairly well" at a development in Staten Island, but Jasper did not give her strong consideration because she lived in New Jersey. Jasper Dep. 38.  Jasper noted she did not consider two other male Superintendents because they had performance issues. Jasper Dep. 36-37.  The plaintiff's transfer to Pomonok was effective April 18, 2016. Lippman Decl. Ex. 5; NYCHA Defs.' 56.1 Stmt. ¶ 31.

**B.**

Over the course of the plaintiff's tenure as Superintendent of Pomonok, the plaintiff received a series of counseling

memoranda from different supervisors for failure to perform
duties, and was the subject of two Local Disciplinary Hearings,
in June 2017 and May 2019. See Lippman Decl. Ex. 14; NYCHA
Defs.' 56.1 Stmt. ¶¶ 43-44, 71-73.  The plaintiff was ultimately
demoted, following a General Trial, beginning on September 11,
2019, and a report and recommendation from the General Trial
Officer, issued on March 22, 2020 and adopted by the NYCHA on
June 4, 2020. Watkins Decl. 56.1 Stmt. ¶¶ 80, 82-83.

The plaintiff is a member of City Employees Union, Local
237 ("Local 237"), and the terms and conditions of her
employment are governed by the Collective Bargaining Agreement
("CBA") between NYCHA and Local 237. Watkins' 56.1 Stmt. ¶ 12.
According to NYCHA policy and the CBA between NYCHA and Local
237, counseling memoranda are not disciplinary actions, are not
punitive, and are instead intended as a performance-correction
tool. NYCHA Defs.' 56.1 Stmt. ¶ 8; Lippman Decl. Exs. 23, 26.
The plaintiff has denied the foundation for the counseling
memoranda and has testified that she believes the counseling
memoranda were issued for retaliatory or discriminatory reasons.
Williams Dep. 125-26, 319-20; SAC ¶¶ 8, 10, 12, 14, 16-18, 21,
23-25, 27.

The responsibilities of a Resident Buildings Superintendent
include, "supervis[ing] the operation and maintenance" including
"the care, cleaning[,] and policing of all public spaces within

9

the Housing Authority buildings and grounds"; maintenance of
facilities services (including electricity, water, and waste
disposal); "inspect[ing] the work of maintenance contractors";
training and instruction of maintenance employees;
"supervis[ing] skilled and semi-skilled employees in major
repair programs," including "establish[ing] work schedules";
and, responding to requests for necessary repairs and
adjustments.  Lippman Decl. Ex. 6.

On January 23, 2017, the plaintiff was issued a counseling
memorandum by Gonzalez, for failing to monitor maintenance work
orders through the Maximo, a NYCHA software system, resulting in
Pomonok's having the highest average turnaround time for
completion of work orders in the borough, of 15.82 days.
Gonzalez Decl. ¶ 3; NYCHA Defs.' 56.1 Stmt. ¶ 35; Lippman Decl.
Ex. 14, at 2-3. NYCHA's target at the time was to complete
maintenance work orders in 7 days. Gonzalez Decl. ¶ 3.  The
plaintiff claimed that Gonzalez issued the counseling memorandum
because the plaintiff complained about not having enough staff
to Queens Borough Management and because she had previously sued
Jasper. Williams Dep. 123-26.  Gonzalez has provided a sworn
declaration stating that the January 23, 2017, counseling
memorandum was issued solely based on the plaintiff's poor
performance. Gonzalez Decl. ¶ 6. The plaintiff received an
additional counseling memorandum on January 30, 2017, that was

later rescinded, because it was found to be largely duplicative of the January 23, 2017 counseling memorandum. Jasper Dep. 59-60.

In February 2017, the plaintiff wrote a letter to Local 237 President, Gregory Floyd, copying NYCHA Chair Shola Olatoye and several state and local politicians; the letter set forth seven complaints about the conditions of the plaintiff's employment as Superintendent of Pomonok ("February 2017 Letter"). Lippman Decl. Ex. 15. The plaintiff complained that: (1) she disagreed with the January 23, 2017 counseling memorandum, (2) the January 30, 2017 counseling memorandum related to the same conduct as the January 23, 2017 counseling memorandum, (3) the plaintiff lacked "necessary staff," (4) the plaintiff raised these concerns with Deputy Directors and Administrators, (5) she found an August 2014 news article suggesting that similar staffing issues existed at the time, (6) the conditions at Pomonok existed before the plaintiff became Superintendent, but she had not been provided "adequate staffing, tools, and equipment" to address the conditions, and (7) as a "female Residential Superintendent in a male dominated title" the plaintiff had "not been given the same [e]qual opportunity as the male Superintendents" in similar large developments. Id. In response the February 2017 Letter, the NYCHA Director of Human Resources contacted the plaintiff on March 2, 2017 to state that the

11

letter had been forwarded to the Senior Vice-President for
Operations, the Director of the Queens-Staten Island Property
Management Department, and the Equal Opportunity Department
("DEO") for review and investigation. Lippman Decl. Ex. 15, at
4.  On March 3, Igor Shandler, Investigator for the NYCHA Office
of Employment and Fair Housing Investigation, informed the
plaintiff that the matter had been referred by the DEO for
investigation and scheduled an appointment with the plaintiff
for March 9, 2017, to discuss the plaintiff's allegations.  Id.
at 5.  However, the plaintiff did not contact Shandler, or
otherwise pursue her allegations through the DEO process,
because the plaintiff "decided to put in a complaint" with the
U.S. Equal Employment Opportunity Commission ("EEOC") instead.
Williams Dep. 181.  Jasper, with the assistance of Gonzalez and
Davis, submitted a memorandum, dated March 13, 2017, to the
NYCHA Executive Vice-President and Chief Administrative Officer,
addressing the complaints in the plaintiff's February 2017
Letter. NYCHA Defs.' 56.1 Stmt. ¶ 82; Jasper Dep. 54; Lippman
Decl. Ex. 16.

On April 26, 2017, Hoffman issued a counseling memorandum
to the plaintiff because of an ongoing problem that the
plaintiff had failed to resolve, relating to raw sewage present
in the crawl space at the development, and other unsatisfactory
janitorial conditions.  NYCHA Defs.' 56.1 Stmt. ¶ 39; Lippman

Decl. Ex. 14, at 4; Hoffman Decl. ¶ 3.  The plaintiff alleges that Hoffman instructed her to "pick up contaminated garbage" and to clean the crawl space personally in an attempt to "physically injur[e]" the plaintiff. SAC ¶¶ 12-13.  However, the plaintiff admitted that she was instructed to hire vendors to perform the clean up work. Williams Dep. 184-85, 191.  The plaintiff alleged Hoffman issued the April 26, 2017 memorandum— relating to the raw sewage found in the crawl space at Pomonok— in retaliation for the plaintiff's February 2017 Letter. NYCHA Defs.' 56.1 Stmt. ¶ 41. However, the plaintiff conceded that Hoffman was not copied on the letter to Floyd and that she is unaware whether Hoffman even knew about the letter. Williams Dep., at 186, 189-91.

In May 2017, the plaintiff was served with a Notice of Local Hearing/Specification of Charges from Hoffman, with two charges of "incompetency and/or misconduct," based on the conduct that was the basis for the January 23, 2017 and April 26, 2017 counseling memoranda. NYCHA Defs.' 56.1 Stmt. ¶ 43; Lippman Decl. Ex. 17, at 2.  Under Section 75 of the New York State Civil Service Law, the plaintiff is entitled to notice and a hearing before any formal disciplinary action is taken by NYCHA, and under the terms of the CBA, minor disciplinary matters are first tried before a neutral Hearing Officer at a "Local Hearing," in lieu of a formal hearing under Section 75.

Watkins' 56.1 Stmt. ¶¶ 13-14. Under the CBA, the decision of the neutral Hearing Officer "shall be final and binding on the parties and cannot be appealed or aggrieved." Id. ¶ 14. The Local Disciplinary Hearing was held on June 28, 2017, and the plaintiff was represented by a representative from her union.  NYCHA Defs.' 56.1 Stmt. ¶ 44. The Hearing Officer, Fredericka Wilson, found Williams guilty on one of the two charges, dismissed the second charge, and issued a formal reprimand. Lippman Decl. Ex. 17, at 3.  The plaintiff claims that, Wilson, in the presence of the plaintiff's union representative, told her that the plaintiff "should not have taken her little letter dated February 8, 2017 to the [Chair] Shola Olatoye." SAC ¶ 14.   The plaintiff testified that neither she nor her union representative asked what Wilson meant by this remark. Williams Dep. 196-199.

Also in May 2017, Watkins was promoted to Manager at Pomonok and became the plaintiff's supervisor.  Watkins' 56.1 Stmt. ¶ 17. Watkins has testified that she believed there to be many ongoing issues with the plaintiff and staff under the plaintiff's supervision, including failure to perform their duties in a manner consistent with NYCHA's policies and procedures. Watkins Decl. ¶ 15.  Watkins reported that, before issuing any counseling memoranda to the plaintiff, she first attempted to address the plaintiff's work performance issues

14

informally and had a series of conversations with the plaintiff about improving her performance. Watkins' 56.1 Stmt. ¶ 40.

Nevertheless, the plaintiff continued to receive counseling memoranda, including a memorandum by Hoffman on December 19, 2017 for failure to inspect and maintain exterior lights for Pomonok. NYCHA Defs.' 56.1 Stmt. ¶ 47. The plaintiff has claimed that she believes the memorandum was unlawful because only a certified electrician could determine if the light bulbs were out, and because the memorandum included one of the plaintiff's subordinates as a witness. SAC ¶ 16; Williams Dep. 215-22. The plaintiff admitted that the "whole place is supposed to have lighting" and that she can tell if a light is working by looking at it. Williams Dep. 220, 222. According to the counseling memorandum, when the plaintiff was ordered to complete an inspection of all exterior lights, 157 lights were not working, and the plaintiff could not produce any proof to show that any light inspections had occurred for several months, resulting in complaints at a Mayoral Town Hall Meeting. Lippman Decl. Ex. 14, at 12. Amanda Donahue, Assistant Director of Employer Relations in NYCHA's Human Resources Department, has testified that, contrary to the plaintiff's assertions, NYCHA policy only prohibits a subordinate from issuing a counseling memorandum, not from witnessing one. NYCHA Defs.' 56.1 Stmt. ¶ 49; Donohue Dep. 14.

On January 29, 2018, Watkins issued a counseling memorandum to the plaintiff for failing to report numerous compactor outages or create work orders for their repair. Lippman Decl. Ex. 14, at 14. On January 4, 2018, Jasper had asked the plaintiff to inspect certain compactors at Pomonok to verify a complaint that they were not working; the next day, the plaintiff reported to Jasper that all compactors were operational.  Watkins' 56.1 Stmt. ¶¶ 42-43. Later that day, when Davis and Watkins inspected the compactors, it was discovered that only one of the nineteen was actually operational. Id. ¶ 44. When Davis e-mailed Jasper and the plaintiff about the compactors later on January 5, 2018, the plaintiff claimed that she personally inspected the compactors and found that some were running and "work orders are being created" for the remaining compactors. Id. ¶ 46. However, despite knowing of the inoperable compactors on January 5, the plaintiff did not create work orders for the compactors until January 9 and 11. Watkins' 56.1 Stmt. ¶¶ 48-49. The plaintiff has conceded that she relied on her subordinates to check the compactors and failed either to inspect them herself or to verify whether her subordinates actually checked them. NYCHA Defs.' 56.1 Stmt. ¶ 53; Williams Dep. 230-233.

On May 7, 2018, Watkins issued another counseling memorandum to the plaintiff for failing to manage the

16

productivity of the maintenance staff. Lippman Decl. Ex. 14, at

16.   In the memorandum, Watkins noted that half of the Pomonok

maintenance staff worked below the recommended number of work

orders a day, and on average maintenance workers started their

shifts 30 minutes late. Id.; Watkins' 56.1 Stmt. ¶¶ 51-52.   The

plaintiff contests the accuracy of the work order monitoring

system, Maximo, and claimed that she was the only Superintendent

to receive a counseling memorandum related to maintenance worker

productivity. NYCHA Defs.' 56.1 Stmt. ¶ 56; Williams Dep. 250-

53; SAC ¶ 19. However, the plaintiff testified that she based

this belief on discussions with only two colleagues. NYCHA

Defs.' 56.1 Stmt. ¶ 58; Williams Dep. at 256-58.

On December 5, 2018, Watkins issued another counseling

memorandum to the plaintiff for failing to submit Building

Inspections and Supervisor of Caretakers Daily Caretaker

Checklists for the month of November. Lippman Del. Ex. 14, at

17.[4] Williams testified that she was "out" for "some of November"

and that the Supervisor of Caretakers, who reported to the

plaintiff, was insubordinate. NYCHA Defs.' 56.1 Stmt. ¶ 60;

Watkins' 56.1 Stmt. ¶ 62.

On March 25, 2019, Watkins again issued Williams a

counseling memorandum for failing to submit Caretaker Daily

---

[4]  The plaintiff has alleged that Watkins "backdated" the counseling
memorandum, because she did not receive the memorandum until December 10,
although it was dated December 5. SAC ¶ 21; Williams Dep. at 266-73.

Checklists for March 14-22, 2019, or Building Inspection Reports
for the month of March in a timely manner. Lippman Decl. Ex. 14,
at 19. The plaintiff has testified that Watkins also verbally
complained to her about filing the Checklists late in February,
but that the plaintiff believed this to be unfair because she
was "out" in February. Williams Dep. 276-80. Another
Superintendent, Clayton McDonald, was filling in for Williams
when she was on leave in February, and the plaintiff claimed
that McDonalds was "not held accountable" in the same manner as
the plaintiff, but admitted that she did not remember if she
collected Checklists for the days in February when she was not
on leave. Williams Dep. 282. The plaintiff has alleged that it
is "not [her] job" to give Watkins the Buildings Inspection
Reports; however, she also admitted "the superintendent is
supposed to ensure that these [Checklists] [are] being
submitted." Williams Dep. 282, 285.  Nevertheless, the
memorandum was ultimately rescinded, and the plaintiff was never
disciplined on the basis of the March 25, 2019 memorandum.
Watkins' 56.1 Stmt. ¶¶ 63-64.

On April 26, 2019, Regional Asset Manager Neagia Drew,
issued Williams a counseling memorandum for failure to safeguard
NYCHA property, failure to ensure that basement storerooms were
cleaned, failure to submit building inspection reports, and
failure to ensure that NYCHA fixtures and equipment were stored

in safe, clean locations. Lippman Decl. Ex. 14, at 20. During an inspection on April 2, it was discovered that several storage rooms in the basement of Building #26, that were used to store NYCHA fixtures and appliances, were damaged due to raw sewage and infestations of squirrels and mice. Id. When Drew visited Pomonok on April 10, the storage rooms were in the same condition as described on April 2, and it was determined that basement stoppages were a known, recurring problem. Id. The plaintiff asserts that the memorandum is inaccurate, but concedes that she did not inspect the damage during the period alleged in the memorandum, and did not do so until notified by Watkins. Williams Dep. 302.

Subsequently, the plaintiff was again served with a Notice of Local Hearing/Specification of Charges, dated May 3, 2019, setting forth three charges of incompetency or misconduct, based on the conduct that served as the basis for the December 5, 2018, May 7, 2018, and January 29, 2018 counseling memoranda. Lippman Decl. Ex. 18; NYCHA Defs.' 56.1 Stmt. ¶ 70; Watkins' 56.1 Stmt. ¶ 67. The Local Disciplinary Hearing took place on May 22, 2019, the plaintiff was represented by her union, and the plaintiff was found guilty of all three charges.  NYCHA Defs.' 56.1 Stmt. ¶ 71. The Hearing Officer imposed a penalty of three days accrued annual leave. Id.

Thereafter, the plaintiff received two more counseling memoranda: one on June 13, 2019 from Neagia Drew for, among other things, failure to ensure the maintenance of the compactors, and one from Watkins on June 17, 2019, for failure to submit Daily Caretaker Checklists, failure to ensure lights were working, and misrepresenting the condition of the lights to Drew. Lippman Decl. Ex. 14, at 23, 34; NYCHA Defs.' 56.1 Stmt. ¶¶ 74-77.

On July 11, 2019, the plaintiff was served with three charges of incompetency or misconduct, in preparation for a Civil Service Law Section 75 General Trial. The charges related to the conduct documented in the April 26, 2019 and June 13, 2019 counseling memoranda. NYCHA Defs.' 56.1 Stmt. ¶ 108. The plaintiff was tried jointly with Watkins—both represented by counsel-over the course of seven days. NYCHA Defs.' 56.1 Stmt. ¶¶ 107, 111.  On March 17, 2020, the Trial Officer issued a Report and Recommendation dismissing the charges against Watkins. Watkins Decl. Ex. 17. On March 22, 2020, the Trial Officer dismissed the first charge against the plaintiff, but sustained the second and third charges against the plaintiff. For the first charge, for failure to maintain the storage rooms, the Trial Officer found that NYCHA had "not proved by a preponderance of the credible evidence" that the plaintiff "failed to perform [her] duties in a satisfactory manner,

failed, neglected, or refused to perform [her] duties or complete assigned tasks" or was "otherwise insubordinate," by failing to have the storage rooms in Building #26 cleaned, or by failing to protect the materials stored therein, because there was some uncertainty as to which teams were responsible for keeping the room clean. Lippman Decl. Ex. 20, at 12.  However, the Trial Officer found NYCHA met its burden and sustained the second charge (for failing to ensure certain other storage rooms were properly maintained and that sewage stoppages were cleaned) and the third charge (for failure to ensure the maintenance of the compactors). Id. at 12-14.

With respect to both charges that were sustained, the Trial Officer found that the plaintiff failed to investigate properly and failed to complete necessary work orders. Id. Specifically for the compactors, the Trial Officer noted, the plaintiff "allowed a complete breakdown in documenting and reporting the conditions of the compactors at [Pomonok]," and that the plaintiff's claims that she was unaware of the problems were "untenable." Id. at 14. Based on these findings, the Trial Officer concluded that:

> "[Williams] has not performed well as Superintendent under a variety of different Managers, Regional Asset Managers, and other supervisors in Queens Management Department. I cannot conclude from the record that the violations are intentional misconduct. They appear to be a lack of competence to supervise at the highest level."

21

Id. at 16.   Therefore, the Trial Officer recommended that the plaintiff be demoted to Assistant Superintendent. NYCHA Defs.' ¶¶ 112-15.   NYCHA subsequently approved and adopted the Trial Officer's recommendations. Id. ¶ 116.

## c.

During the plaintiff's tenure as Superintendent of Pomonok, the plaintiff filed two charges of discrimination with the EEOC against NYCHA.   The first Notice of Discrimination was stamped "Received May 15, 2017" ("First EEOC Charge"), and the second stamped "Received March 16, 2018" ("Second EECO Charge"). NYCHA Defs.' 56.1 Stmt. ¶¶ 117-18. The plaintiff received "Dismissal and Notice of Rights" letters, dated February 23, 2018 and March 7, 2018, respectively. Id. The First EEOC Charge alleged discrimination on the basis of race and sex, and retaliation for bringing previous litigation against NYCHA, and the Second EEOC Charge listed retaliation for filing the First EEOC Charge. Id.

The plaintiff filed this action in the Supreme Court of the State of New York on May 2, 2018, and the defendants removed the action to this Court on June 29, 2018. ECF No. 1. The plaintiff filed an Amended Complaint on August 30, 2018, and the defendants filed an answer.   Because the General Trial occurred during the pendency of this action, Magistrate Judge Lehrburger granted NYCHA's motion to withdraw as counsel for Watkins due to a potential conflict of interest. ECF No. 63.   On October 15,

2019, the plaintiff filed a Second Amended Complaint, to which the NYCHA plaintiffs filed an answer, and Watkins filed an answer with a cross-claim against NYCHA.

After the defendants' motions for summary judgment were fully briefed, the plaintiff filed a motion for a preliminary injunction to "enjoin[] defendant NYCHA from unlawfully demoting her and restore [the] plaintiff back to her Civil service position as Resident Buildings Superintendent" and an award of "the appropriate loss of back pay." ECF No. 135.  In the plaintiff's preliminary injunction motion, the plaintiff raised new arguments not found in the plaintiff's SAC, alleging that the General Trial and the decision by NYCHA to accept the General Trial Officer's decision denied the plaintiff an "adequate due process hearing" and removed the plaintiff "without procedur[e] of Law." Id.

## II.

The standard to be applied to a motion for summary judgment is well-established.  "The court should grant a summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Cartrett, 477 U.S. 317, 322-23 (1986).[5] "[T]he trial court's task

---

[5]  Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The Court's "duty, in short, is confined at this point to issue-finding," and "does not extend to issue-resolution." Id.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment should be denied if, when the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in

24

favor of that party." Soto v. Gaudett, 862 F.3d 148, 157 (2d Cir. 2017). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

It is well established that courts must afford pro se litigants a special solicitude in connection with motions for summary judgment. Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). A pro se party's papers opposing summary judgment are to be read liberally and interpreted so as to "raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). However, the special solicitude afforded pro se litigants does not "relieve" a plaintiff of the "duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003). "Nor is the duty to liberally construe a [pro se] plaintiff's opposition the equivalent of a duty to re-write it." Nieblas-Love v. N.Y.C. Hous. Auth., 165 F. Supp. 3d 51, 65 (S.D.N.Y. 2016).

### III.

The plaintiff has brought claims against the defendants pursuant to Title VII, NYSHRL, NYCHRL, and Sections 1981, 1983, and 1985, alleging disparate treatment, hostile work

environment, and retaliation, on the basis of race and gender. In addition, the plaintiff has brought a claim for First Amendment retaliation, pursuant to Section 1983.[6]

## A. Section 1981 and Section 1985 Claims

As an initial matter, the plaintiff's claims pursuant to Section 1981 and Section 1985 fail as a matter of law. First, the plaintiff's discrimination, hostile work environment, and retaliation claims under Section 1981 against NYCHA fail because the plaintiff's claims are properly brought under Section 1983, and "[Section] 1981 does not provide a separate private right of action against state actors." Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018). Municipal employees sued in their official capacity, such as the individual defendants in this case, are representatives of the state and may not be sued under Section 1981. Pierre v. City of New York, No. 17-CV-5782, 2020

---

[6] To the extent that the plaintiff seeks to raise an improper labor practice in violation of N.Y. Civ. Serv. L. § 209-a, the defendants correctly note that the New York State Public Employment Relations Board has "exclusive nondelegable jurisdiction" over claims of improper labor practices as provided in Section 209-a, see N.Y. Civ. Serv. L. § 205(5)(d), and the plaintiff has not alleged facts that would support an exception. See Ifill v. N.Y. State Ct. Officers Ass'n, 655 F. Supp. 2d 382, 392 & n.2 (S.D.N.Y. 2009).

To the extent that the plaintiff seeks to allege a violation of the Occupational Safety Health Act ("OSHA"), the defendants correctly note that there is no private right of action under OSHA. Donovan v. Occupational Safety & Health Review Comm'n, 713 F.2d 918, 926 (2d Cir. 1983); see also Momot v. Dziarcak, 208 F. Supp. 3d 450, 460-61 (N.D.N.Y. 2016).

Further, in the plaintiff's 56.1 Response, the plaintiff appears to have raised allegations that certain defendants were not duly appointed, allegedly against the requirements of New York Civil Service Law §§ 61 & 65. The plaintiff has offered no evidence to support such allegations. In any event, such allegations were not in the SAC and are not relevant for the plaintiff's existing claims.

WL 353538, at *4 (S.D.N.Y. Jan. 21, 2020), <u>aff'd</u>, No. 20-cv-627, 2021 WL 485723 (2d Cir. Feb. 10, 2021).[7] Therefore, the plaintiff is barred from asserting claims under Section 1981 against NYCHA and the individual defendants.[8]

In addition, the plaintiff's Section 1985 claim–for conspiracy to interfere with civil rights–fails, because the plaintiff has neither alleged, nor proffered evidence to support the involvement of any parties external to NYCHA.  Under the intra-corporate conspiracy doctrine, members of the same organization or entity cannot legally conspire together for purposes of Section 1985.  <u>See, e.g.</u>, <u>Talley v. Brentwood Union Free Sch. Dist.</u>, 728 F. Supp. 2d 226, 234 (E.D.N.Y. 2010); <u>Ritzie v. City Univ. of New York</u>, 703 F. Supp. 271, 277-78 (S.D.N.Y. 1989). Thus, the plaintiff's Section 1985 claim must be dismissed as a matter of law.[9]

---

[7]  To the extent that the plaintiff is suing the individual defendants in their individual capacities under Section 1981, the plaintiff's claims also fail. <u>See, e.g.</u>, <u>Pierre</u>, 2020 WL 353538, at *4; <u>Gonzalez v. City of New York</u>, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019).

[8]  Furthermore, claims of discrimination on the basis of gender are "outside of the scope of Section 1981, which deals with discrimination on the basis of race or alienage." <u>Hawkins v. 1115 Legal Serv. Care</u>, 163 F.3d 684, 693 (2d Cir. 1998); <u>see</u> 42 U.S.C. § 1981(a) (protecting the right of "[a]ll persons within the jurisdiction of the United States . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . .").

[9]  Moreover, there is no factual basis in the record to suggest the presence of a "meeting of the minds" to achieve an "unlawful end" sufficient for the plaintiff to maintain the action. <u>Webb v. Goord</u>, 340 F.3d 105, 110 (2d Cir. 2003).

### B. Title VII and Section 1983 Disparate Treatment Claims

Title VII makes it unlawful for an employer to discriminate on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1). However, Title VII provides for liability against employers, not individual supervisors. Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir.2000) (per curiam). Because Title VII does not impose liability on individuals, see, e.g., Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012), Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003), the plaintiff's Title VII claims against the individual defendants are barred.

While the plaintiff's Title VII claims against NYCHA are not legally barred, no reasonable jury could find that the plaintiff has provided sufficient evidence to support such claims. Similarly, while the plaintiff's Section 1983 claims, alleging disparate treatment, against the individual defendants are not legally barred, there is no legally sufficient evidence to support such claims in this case.[10]

A plaintiff who claims racial or gender discrimination in public employment in violation of the Fourteenth Amendment may bring suit, pursuant to Section 1983, under a theory of "disparate treatment." Naumovski v. Norris, 934 F.3d 200, 212-14

---

[10]  As discussed below, the disparate treatment claims against NYCHA based on Section 1983 also fail.

(2d Cir. 2019); Vega v. Hempstead Union Free Sch. Dist., 801
F.3d 72, 80 (2d Cir. 2015).

Racial or gender discrimination claims brought pursuant to
Title VII and Section 1983 are governed at the summary judgment
stage by the burden-shifting analysis established for Title VII
claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973). Naumovski, 934 F.3d at 212; Vega, 801 F.3d at 87. To
establish a prima facie case of discrimination, a plaintiff must
demonstrate: (1) that the plaintiff is a member of a protected
class; (2) that the plaintiff was qualified for the job; (3)
that the plaintiff suffered an adverse employment action; and
(4) that the adverse employment action occurred under
circumstances giving rise to an inference of discrimination. See
McDonnell Douglas, 411 U.S. at 802; see also St. Mary's Honor
Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty.
Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the
plaintiff meets the minimal burden of establishing a prima facie
case, the burden of production then shifts to the defendant to
offer a legitimate, non-discriminatory rationale for the adverse
employment action. See McDonnell Douglas, 411 U.S. at 802-03;
see also Hicks, 509 U.S. at 506-07; Burdine, 450 U.S. at 254-55.
If the defendant articulates a legitimate reason for the action,
the presumption of discrimination raised by the prima facie case
drops out, and the plaintiff has the opportunity to demonstrate

that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was. See McDonnell Douglas, 411 U.S. at 804; see also Hicks, 509 U.S. at 507-08; Burdine, 450 U.S. at 255-56.

Although the burden of production shifts, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253. For a disparate treatment claim under Title VII, a plaintiff must demonstrate that race was at least "a motivating factor" for the adverse employment action, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), whereas a discrimination claim under Section 1983 requires the plaintiff to demonstrate the defendant's discriminatory intent was the "but-for" cause of the adverse employment action. Naumovski, 934 F.3d at 214. "Though caution must be exercised in granting summary judgment [in disparate treatment cases] where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Wesley-Dickson v. Warwick Valley Cent. Sch. Dist., 973 F. Supp. 2d 386, 397-98 (S.D.N.Y. 2013), aff'd, 586 F. App'x 739 (2d Cir. 2014).

To support her claims of discrimination through disparate treatment, the plaintiff has pointed to (1) Jasper's decision to transfer the plaintiff from one Superintendent position to

another, (2) the series of counseling memoranda the plaintiff

received from different supervisors, (3) the Local Disciplinary

Hearings against the plaintiff, (4) an alleged failure to

provide training for the plaintiff, (5) Watkins' denial of two

leave of absence requests, (6) allegedly unreasonable work

assignments, and (7) the findings and recommendation of the

General Trial Officer. None of these challenged actions are

sufficient to meet even the minimal burden of establishing a

prima facie claim of disparate treatment. Moreover, the

defendants have provided legitimate reasons for each action, and

the plaintiff has failed to establish the appropriate causal

nexus between any of the challenged actions and the plaintiff's

race or gender.

1.

The plaintiff's claims of disparate treatment based on the

transfer to Pomonok are either time-barred or without merit.

First, with respect to the plaintiff's Title VII disparate

treatment claim, the plaintiff's allegations concerning the

transfer to Pomonok are time-barred. The transfer took effect

in April 2016, whereas the plaintiff's First EEOC Charge was

filed in May 2017. Therefore, the transfer occurred more than

300 days prior to the First EEOC Charge was filed, outside the

time limit provided for in the statute. See 42 U.S.C. § 2000e-

5(e).

Moreover, the plaintiff has failed to demonstrate that the transfer to Pomonok was an adverse employment action. For a disparate treatment claim, "[t]o qualify as an adverse employment action, the employer's action toward the plaintiff must be materially adverse with respect to the terms and conditions of employment." Davis v. New York City Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). A plaintiff must demonstrate the employer took actions that were "more disruptive than a mere inconvenience or an alteration of job responsibilities." Id.  The transfer from being Superintendent at Beach 41st to Pomonok was a lateral transfer, without change in title, pay, or employment responsibilities.[11] The plaintiff has testified that, in their discussion about the transfer, Jasper told the plaintiff that she was doing a "good job" at Beach 41st.  The plaintiff argues that Pomonok was a less desirable assignment because it was in worse condition than other developments, but has offered no evidence to support this comparison other than her own testimony and a news article suggesting that Pomonok faced issues prior to the plaintiff's tenure as Superintendent.  However, the chance for the plaintiff to be transferred to a larger development presented an opportunity to the plaintiff, and there is considerable evidence

---

[11]  It is for this reason that the plaintiff's Exhibit E is irrelevant.  The position advertised in Exhibit E was a promotion, not a lateral transfer.

in the record to suggest that the plaintiff had resources
available at Pomonok that the plaintiff left significantly
unused—such as "Get It Done" initiative funds and authorization
to solicit contractors for repairs and clean up.

Moreover, the facts and circumstances surrounding the
plaintiff's transfer to Pomonok do not support an inference of
discrimination.  Jasper explained that she selected Williams,
because Williams had experience overseeing modernization efforts
at a large development, was impressed with the plaintiff's
preparedness for borough meetings, and believed the plaintiff
was doing a "good job." The plaintiff has argued that other male
Superintendents (Costa or Mercado) could have been transferred
to Pomonok; however, she has offered nothing to support this
claim other than the plaintiff's beliefs about Jasper's
perception of Costa and Mercado.[12]  Jasper's testimony emphasizes
that Jasper determined that neither Costa nor Mercado were
appropriate to transfer because Mercado oversaw a large
development, making his replacement more difficult, and Costa
was "working through" some issues.  Jasper similarly considered
several other Superintendents—both male and female—who Jasper

---

[12]  Jasper, who made the decision to transfer the plaintiff, is also a black
female.  Courts have recognized that plaintiff's allegations of
discrimination based on membership in a protected class are weakened, such
that an inference of discrimination without any additional evidence may be
unwarranted, when the decisionmaker and the plaintiff are members of the same
protected class.  See, e.g., Moore v. Kingsbrook Jewish Med. Ctr., No. 11-CV-
3625, 2013 WL 3968748, at *11 (E.D.N.Y. July 30, 2013) (collecting cases).

ruled out because of either travel hardships or performance
issues.  Finally, the plaintiff has not presented evidence to
suggest that the plaintiff's race or gender was even a
"motivating factor" in Jasper's decision for the transfer.

2.

The plaintiff's claims of disparate treatment based on the
counseling memoranda issued to the plaintiff during her tenure
at Pomonok are similarly unavailing.

First, because the memoranda are not punitive, and are
produced to provide an employee with an opportunity to correct
and improve performance, the plaintiff has not demonstrated that
the issuance of counseling memoranda itself is an adverse
action.  Indeed, the Court of Appeals for the Second Circuit has
previously held that NYCHA's counseling memoranda to this
plaintiff do not constitute an adverse employment action.
Williams v. N.Y.C. Hous. Auth., 335 F. App'x 108, 110 (2d Cir.
2009). See also Uddin v. City of New York, 427 F. Supp. 2d 414,
429 (S.D.N.Y. 2006) (concluding counseling memoranda from the
plaintiff's different supervisors were not adverse actions,
because "being advised and counseled does not, as a matter of
law, constitute an adverse employment action").

Moreover, the plaintiff has not proffered evidence to
support an inference of discrimination for the counseling
memoranda.  The counseling memoranda provide detailed

34

descriptions, documenting the plaintiff's specific, substandard performance issues.  The counseling memoranda were issued by four different supervisors (Gonzalez, Hoffman, Watkins, and Drew) over a two-year period. The plaintiff claims that the counseling memoranda were issued because of her complaints in the February 2017 Letter or her lawsuit against Jasper in 2012.

First, the 2012 lawsuit is too remote to support an inference of discrimination. The Court of Appeals for the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). However, if a plaintiff seeks to rely solely on temporal proximity, the protected activity and alleged retaliation must have occurred "very close" in time. Clark County School District v. Breeden, 532 U.S. 268, 273-74 (2001). Courts in the Second Circuit have generally found periods greater than two months to be too long to support the inference of causation. See, e.g., Stoddard v. Eastman Kodak Co., 309 F. App'x. 475, 480 (2d Cir. 2009).

Moreover, the counseling memoranda began before the February 2017 Letter and continued for long afterwards, and the plaintiff has not presented evidence connecting the 2017

35

February Letter to the decisions of four different supervisors
to issue the counseling memoranda. Any inference of
discrimination is further undermined by the fact that two
counseling memoranda (on January 30, 2017 and March 25, 2019)
issued to the plaintiff were later rescinded, after it was
determined their basis was duplicative or unnecessary. Jasper
Dep. 59-60; Watkins' 56.1 Stmt. ¶ 64. Finally, the plaintiff has
made conclusory allegations that she was singled out for
scrutiny and counseling memoranda for certain performance
issues; but the plaintiff has not offered any evidence to
support these allegations.

Furthermore, the defendants have provided extensive
evidence, documenting the legitimate basis for each of the
counseling memoranda at issue, and "[m]erely disagreeing with a
supervisor's assessment of work performance, however, is
insufficient to raise a triable issue of fact regarding
pretext." Iverson v. Verizon Commc'ns, No. 08-cv-8873, 2009 WL
3334796, at *5 (S.D.N.Y. Oct. 13, 2009). See also Mattera v.
JPMorgan Chase Corp., 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010)
(noting "disagreement[s] . . . do not, as a matter of law or
logic, mean that present poor performance reviews [are]
unfounded"); Brenner v. City of New York Dep't of Educ., 132 F.

Supp. 3d 407, 418 (E.D.N.Y. 2015), aff'd, 659 F. App'x 52 (2d

Cir. 2016).[13]

3.

The plaintiff's disparate treatment claims based on the

Local Disciplinary Hearings are also unavailing. The plaintiff

has alleged that the June 2017 Local Disciplinary Hearing was a

discriminatory action, because the plaintiff alleges that the

neutral Hearing Officer Fredericka Wilson, told her that "she

should not have taken her little letter" to Chair Shola Olatoye.

NYCHA Defs.' 56.1 Stmt. ¶ 45.  While the February 2017 Letter

did not mention the plaintiff's race, it did mention that the

plaintiff was a woman.  However, there is no evidence that

Wilson ever received the February 2017 Letter, or that Hoffman—

who brought the charges that were the basis for the June 2017

Local Disciplinary Hearing—had received the letter.

As explained below, while the alleged remark by Wilson may

be evidence to support the plaintiff's retaliation claims, there

is nothing about the comment itself that suggests the Wilson was

discriminating against the plaintiff on the basis of race or

sex.  Therefore, to the extent the plaintiff alleges a disparate

---

[13]  In addition, the factual findings of the General Trial Officer, as the
administrative hearing officer in a New York Civil Service Law § 75 hearing,
preclude the plaintiff from relitigating the question of whether the
plaintiff's performance was satisfactory, on the merits, for the conduct that
was the foundation for the April 26, 2019 and June 13, 2019 counseling
memoranda. Matusick v. Erie County Water Auth., 757 F.3d 51, 49 (2d Cir.
2014).

treatment claim on the basis of Wilson's alleged remark, the alleged comment is insufficient to give rise to an inference of discrimination, or to demonstrate a triable issue of fact regarding pretext. Furthermore, there is no evidence that the May 2019 Local Disciplinary Hearing was brought about because of the plaintiff's race or sex or that the plaintiff's race or sex entered into the disciplinary decision.

4.

The plaintiff has alleged that NYCHA failed to provide her with adequate training, including on the Maximo system. However, the plaintiff's NYCHA Training Transcript demonstrates that Williams received, as of January 2020, 113 courses of NYCHA training, including Maximo training in July 2015, June 2013, and April 2009. Lippman Decl. Ex. 13. Further, the plaintiff was scheduled but failed to attend training on "Managing Public Housing Maintenance" in December 2018 and February 2019. Id.; NYCHA Defs.' 56.1 Stmt. ¶ 103. Moreover, the plaintiff admitted that she was aware that she could request training at any time, but did not do so. Williams Dep. 116, 140. Finally, there is no evidence in the record that would suggest an inference that the plaintiff's training (or lack thereof) is connected in any way to her race or gender, or otherwise support even a prima facie claim for disparate treatment.

5.

The plaintiff's disparate treatment claims based on two occasions where the plaintiff's request for leave were denied are similarly unpersuasive. On August 21, 2018, the plaintiff requested paid leave for August 24, 2018.  However, Watkins already had scheduled to be on vacation on that day, and because Pomonok was short staffed, Watkins denied the plaintiff's request because of "no coverage/shortage of staff," and Watkins' supervisor, Neagia Drew, approved the denial. Watkins' 56.1 Stmt. ¶¶ 54, 56. Similarly on August 8, 2019, the plaintiff submitted a leave of absence request for August 19, 2019, citing "Appointment with Union Attorney" as the reason.  NYCHA Defs.' 56.1 Stmt. ¶ 97. This request was denied by Watkins because Watkins was already scheduled to be out, and Watkins listed "insufficient staffing level" as the reason. Id. Under the terms of the CBA, vacation leave is to be "taken at the convenience of" NYCHA, except for sick leave, based on the operational needs of the employee's work location. Watkins Decl. Ex. 1, at 1548; Watkins' 56.1 Stmt. ¶ 57. Moreover, it is undisputed that on at least four other occasions, the plaintiff was granted leave to make court appearances. NYCHA Defs.' 56.1 Stmt. ¶ 96.

The plaintiff claims these denials of leave for two days denied her an "equal opportunity."  However, the Court of Appeals has already held that NYCHA's decision to deny a request for leave from Williams is not an adverse employment action.

Williams, 335 Fed. App'x at 110. Moreover, the plaintiff has not alleged facts, or proffered any evidence, that would support the inference of discrimination.  Finally, the defendants have offered legitimate reasons for the denials of leave, and the plaintiff has not demonstrated any issues of genuine fact about whether these justifications were pretextual.

6.

The plaintiff's Section 1983 and Title VII disparate treatment claims based on having to perform "unreasonable work assignments" also fail. The plaintiff claims that her responsibilities were "unreasonable" because of the size and inadequate staffing at Pomonok.  The plaintiff also appears to claim that she believed Hoffman's instruction to have the crawl space cleared of raw sewage to be an unreasonable work assignment. NYCHA Defs.' 56.1 Stmt. ¶ 40.

First, the plaintiff's job responsibilities "do not constitute adverse employment actions, nor do the allegations suggest that the assignments were part of a campaign of harassment based on" the plaintiff's race or gender. Staten v. City of New York, 726 F. App'x 40, 42–43 (2d Cir. 2018) (affirming dismissal of discrimination claims based on alleged objectional work assignments).  Further, the plaintiff admitted that Hoffman's instruction to her was to hire vendors to clear the crawl space, not to do it personally. Moreover, the

defendants have provided sufficient evidence to show that the plaintiff's failure to manage Pomonok staff's productivity, to use available funds, and to hire vendors were at least contributing factors to the very conditions about which the plaintiff complains.  Finally, the plaintiff has not produced evidence to support an inference that the plaintiff's job responsibilities were in any way related to her race or gender.

7.

Finally, the plaintiff has failed to demonstrate how the General Trial or the General Trial Officer's determinations that she committed the charged conduct and that this was sufficient to sustain her guilt for charges two and three, provide a sufficient basis for a disparate treatment claim.  The conduct that provided the basis for the General Trial was documented in detailed counseling memoranda and evince legitimate concerns about the plaintiff's job performance.  The plaintiff has neither provided any evidence (circumstantial or otherwise) to support an inference of discrimination, nor has the plaintiff provided evidence to suggest the General Trial or the Officer's report and recommendation were a pretext for disparate treatment on the basis of race or gender. Indeed, the General Trial Officer's factual determinations that the plaintiff demonstrated "a lack of competence to supervise at the highest level" preclude the plaintiff from litigating that finding. See

41

Matusick v. Erie County Water Auth., 757 F.3d 51, 49 (2d Cir. 2014).

8.

Finally, although NYCHA, as a municipal agency, may be subject to liability under Monell and its progeny, for Section 1983 claims, such liability is not based on a theory of respondeat superior, but rather on the basis that its policies or customs inflicted the alleged injuries. Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)); Chin v. N.Y.C. Hous. Auth., 575 F. Supp. 2d 554, 565-67 (S.D.N.Y. 2008).  Because the plaintiff has failed to establish the existence of an underlying violation of Section 1983 based on disparate treatment because of race or gender discrimination, there can be no municipal liability.  Moreover, because the plaintiff has failed to establish the existence of a "policy or custom" or demonstrated that a decision by a sufficiently senior agency policymaker violated the plaintiff's rights, the plaintiff has failed to state a claim against NYCHA. See Corley v. Vance, 365 F. Supp. 3d 407, 438 (S.D.N.Y. 2019), aff'd sub nom., Corley v. Wittner, 811 F. App'x 62 (2d Cir. 2020); Chin, 575 F. Supp. 2d at 565 (noting that NYCHA's employment policies are promulgated by its Board of Commissioners, and thus the Commissioners would be the

42

relevant senior policy makers for employment-related <u>Monell</u> liability claim).

Therefore, the defendants are entitled to summary judgment for the plaintiff's disparate treatment claims under Title VII and Section 1983.

### C. Title VII and Section 1983 Hostile Environment Claims

Courts apply a similar standard to analyze hostile work environment claims under Title VII and Section 1983. <u>Patterson v. County of Oneida</u>, 375 F.3d 206, 225, 227 (2d Cir. 2004); <u>Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2</u>, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011).  To establish a prima facie case of a hostile work environment, a plaintiff must show: (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) that a specific basis exists for imputing the objectionable conduct to the employer. <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 149 (2d Cir. 1997) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  The plaintiff must show not only that the plaintiff subjectively perceived the environment to be abusive but also that the conduct complained of is "severe and pervasive enough that a reasonable person would find it hostile or abusive." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 321 (2d Cir. 2015).  Further, "[i]t is axiomatic that mistreatment

at work . . . through subjection to a hostile

environment . . . is actionable under Title VII only when it

occurs because of an employee's [protected

characteristic]." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir.

2001); Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d

429, 451 (E.D.N.Y. 2013). See also Naumovski, 934 F.3d at 214,

221-22 (noting that "while a negligent employer may be held

liable for the conduct of a supervisee" for a hostile work

environment claim under Title VII, a plaintiff pursuing a

hostile work environment claim under Section 1983 must establish

that each defendant's discriminatory intent and conduct was a

"but-for" cause of the hostile environment). "In determining

whether a plaintiff suffered a hostile work environment, we must

consider the totality of the circumstances, including 'the

frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an

employee's work performance.'" Littlejohn, 795 F.3d at 321

(quoting Harris, 510 U.S. at 23). See Das v. Consol. Sch. Dist.

of New Britain, 369 F. App'x 186, 189 (2d Cir. 2010); Boyd v.

Presbyterian Hosp., 160 F. Supp. 2d 522, 541-42 (S.D.N.Y. 2001).

Even after an "assiduous review" of the record, and taking

all of the plaintiff's allegations together, the plaintiff has

failed to make the necessary showing to demonstrate an

objectively hostile environment.  There is no evidence that the
plaintiff was subjected to even a single episode of objectively
abusive or hostile comments, ridicule, or insults, let alone
with the physical threats, frequency, or severity necessary to
rise to the level of a hostile work environment. Boyd, 160 F.
Supp. 2d at 541-42.  To the contrary, the plaintiff was given
numerous opportunities to improve her performance over a two-
year period. While the plaintiff has subjective disagreements
with the defendants about the challenged events-counseling
memoranda, denial of leave, and disciplinary hearings—there is
no evidence in the record to show that the plaintiff's workplace
was objectively hostile and abusive.  Moreover, there is no
evidence that suggests "a linkage or correlation" between the
challenged actions "to the claimed ground of discrimination."
Staten v. City of New York, No. 16-CV-5317, 2017 WL 2937698, at
*9 (S.D.N.Y. July 10, 2017), aff'd, 726 F. App'x 40 (2d Cir.
2018); see also Naumovski, 934 F.3d at 222.

Therefore, the defendants are entitled to summary judgment
on the plaintiff's hostile work environment claims under Title
VII and Section 1983.[14]

---

[14]  As with the plaintiff's Title VII disparate treatment claims, the
plaintiff's claims against the individual defendants for a hostile work
environment in violation of Title VII are legally barred, because Title VII
claims are not cognizable against individual defendants. See Wrighten, 232
F.3d at 120.
  Further, the plaintiff has similarly failed to allege facts, or proffer
evidence, to support the plaintiff's Section 1983 claim for hostile work

### D. Title VII and Section 1983 Retaliation Claims

The plaintiff has alleged that the defendants engaged in retaliation against her in violation of Title VII and Section 1983.

Title VII retaliation claims are evaluated under the burden-shifting framework established in McDonnel Douglas. See El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932-33 (2d Cir. 2010) (per curiam). To establish a prima facie case of unlawful retaliation under Title VII, a plaintiff "must show that (1) [the plaintiff] was engaged in protected activity; (2) the employer was aware of that activity; (3) the [plaintiff] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2014); See also Vega, 801 F.3d at 80; Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010). After the Supreme Court's decision in Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006), the standard for determining whether a materially adverse employment action has been taken for purposes of Title VII retaliation claims, is whether the employer's actions were "harmful to the point that they could well dissuade a reasonable worker from making or supporting a

environment against NYCHA under Monell. See Batista, 702 F.2d at 397; Chin, 575 F. Supp. 2d at 565-67. See also Naumovski, 934 F.3d at 214, 222.

charge of discrimination." Hicks, 593 F.3d at 165 (quoting
White, 548 U.S. at 63). In addition, to establish the necessary
causal link, the plaintiff must provide proof that the unlawful
retaliation would not have occurred in the absence of the
unlawful retaliation: "but-for" causation. Univ. of Tex. Sw.
Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

"The elements of a retaliation claim based on an equal
protection violation under [Section] 1983 mirror those under
Title VII." Vega, 801 F.3d at 91. See also Gonzalez v. City of
New York, No. 20-1126-CV, 2021 WL 438894, at *1-*2 (2d Cir. Feb.
9, 2021) (analyzing Section 1983 retaliation claim under
McDonnell Douglas framework, and requiring demonstration of
"but-for" causation); Raymond v. City of New York, 317 F. Supp.
3d 746, 768 (S.D.N.Y. 2018) (same).

Construing the plaintiff's claims liberally, the plaintiff
has alleged the transfer to Pomonok, counseling memoranda, the
June 2017 Local Disciplinary Hearing, the May 2019 Local
Disciplinary Hearing, denial of leave, and General Trial were
each retaliation for "objecting to" discrimination in her 2012
lawsuit against Jasper, in her February 2017 Letter to her union
president and Chair Otaloye, or in the EEOC Charges.[15]

---

[15] As discussed above, the plaintiff's claims against the individual
defendants for alleged violations of Title VII are legally barred. See
Wrighten, 232 F.3d at 120.
  Further, also as noted above, the plaintiff is time-barred from raising a
Title VII claim on the basis of the transfer to Pomonok; and, in any event,

47

First, with the exception of the Local Disciplinary
Hearings and General Trial, the plaintiff has failed to show
that any of the challenged actions would have dissuaded a
reasonable employee from complaining about discrimination, and
thus are insufficient to support even a prima facie retaliation
claim. Hicks, 593 F.3d at 165.

Further, with the exception of the alleged remark at the
June 2017 Local Disciplinary Hearing about the February 2017
Letter, the record is devoid of evidence to support the
necessary "but-for" causal nexus between any protected activity
and the challenged actions. Nassar, 570 U.S. at 352; Gonzalez,
2021 WL 438894, at *2. There is no evidence in the record to
support a casual link between the 2012 lawsuit against Jasper
and any of the challenged events, and it is too temporally
remote to support an inference of retaliation. See, e.g.,
Stoddard, 309 F. App'x. at 480.

With respect to the EEOC Charges, the plaintiff began
receiving counseling memoranda and was served with the Notice of

---

the plaintiff has failed to demonstrate how the transfer was an adverse
action.
  Further, to the extent the plaintiff has alleged that any failure to train
or unreasonable work assignments were retaliation, the plaintiff has not
provided any allegations connecting decisions about training or work
assignments to any protected activity. Moreover, as explained above, the
plaintiff has failed to adduce any evidence from which a reasonable
factfinder could conclude that the plaintiff was subjected to adverse
treatment regarding training or work assignments, when the plaintiff was
provided with opportunities for training and to hire vendors that the
plaintiff decided not to use.

Local Hearing/Specification of Charges (dated May 10, 2017) for the June 2017 Local Disciplinary Hearing, before the plaintiff filed her First EEOC Charge ("Received May 15, 2017"). NYCHA Defs.' 56.1 Stmt. ¶¶ 117-18. The plaintiff has offered no evidence (direct or circumstantial) connecting any of the challenged actions with the plaintiff's filing of an EEOC Charge, and "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001); see also Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 456 (S.D.N.Y. 2013) (no inference of retaliation, where the plaintiff "received her first written warning three months" before her allegedly protected activity was discovered), aff'd sub nom. Dabney v. Bed Bath & Beyond, 588 Fed. App'x. 15 (2d Cir. 2014); Spadola v. N.Y.C. Transit Auth., 242 F. Supp. 2d 284, 294-95 (S.D.N.Y. 2003) (An employer is "not obligated to automatically cease or abandon an ongoing internal disciplinary procedure merely because an employee files a charge alleging discrimination.").

Further, to the extent that the plaintiff has attempted to suggest that the two occasions on which the plaintiff's requests for leave were denied were connected to the EEOC Charges, such

allegations are unpersuasive.  In the SAC, the plaintiff alleges
that on one or both of the days in August 2018 and 2019 for
which she was denied leave, she needed to take the day off for a
court appearance or meeting with counsel.  However, on at least
four other occasions, when the plaintiff submitted leave
requests to make court appearances, such requests were approved.
NYCHA Defs.' 56.1 Stmt. ¶¶ 96-97.  Moreover, the defendants have
reasonably explained that the plaintiff's leave requests were
denied, because Watkins and other staff had already requested
the day off, and Pomonok was especially short-staffed in August.
The plaintiff does not dispute these facts, but merely argues
that the Assistant Superintendent was not on leave and would
have been sufficient for coverage.  The plaintiff's
disagreements with Watkins' decisions about adequate staffing,
however, are insufficient to demonstrate a genuine issue of fact
as to whether the denials of leave were a pretext for
retaliation. Indeed, the plaintiff has failed to show the
necessary causal nexus between any protected activity and the
decisions to deny the plaintiff leave.

Finally, regarding the February 2017 Letter, with the
exception of the June 2017 Local Disciplinary Hearing, the
plaintiff has failed to proffer evidence from which a reasonable
juror could draw the inference that any other challenged adverse
action would not have occurred "but-for" retaliation for the

50

plaintiff's February 2017 Letter.  The counseling memoranda documented detailed and specific performance issues, beginning in January 2017 (before the February 2017 Letter), and extending until the plaintiff's General Trial.  The plaintiff did not accept responsibility for the performance issues and management failures that provided the foundation for the counseling memoranda, and there were plainly repeated occurrences of similar issues. Further, the plaintiff has failed to show evidence to support an inference of retaliatory animus for the decisions to charge the defendant for either the June 2017 Local Disciplinary Hearing or the May 2019 Local Disciplinary Hearing. The decision of the May 2019 Local Disciplinary Hearing demonstrate that the Hearing Officer considered the charged conduct, and either affirmed or denied the charges, based on the evidence presented, and the plaintiff has not alleged or proffered any evidence to suggest the Local Disciplinary Hearing was affected by any retaliatory animus.

Further, the General Trial Officer's decision was similarly thorough and based on the evidence presented, and the General Trial is too remote from the February 2017 Letter to suggest an inference of retaliation for the February 2017 Letter. Thus, given the absence of any evidence of discriminatory intent, the counseling memoranda, the decision to bring charges to the June 2017 Local Disciplinary Hearing, the charges and outcome of the

May 2019 Local Disciplinary Hearing, and the charges and outcome
of the General Trial are "incident[s] in a long string of
negative evaluations that she received at work, both before and
after" the plaintiff's February 2017 Letter and are insufficient
to support even a prima facia Title VII or Section 1983
retaliation claim. See Kerman-Mastour v. FINRA, 814 F. Supp. 2d
355, 373-74 (S.D.N.Y. 2011) (rejecting a prima facie case of
retaliation under the NYCHRL where the adverse employment action
"was but one incident in a long string of negative evaluations
that she received at work"); see also Jenkins v. N.Y. State
Banking Dep't, No. 07-cv-6322, 2010 WL 2382417, at *11 (S.D.N.Y.
June 14, 2010) ("When disciplinary action begins prior to the
protected activity, there is no inference of retaliation simply
because the adverse action is completed after the protected
activity."); Vitale v. Equinox Holdings, Inc., No. 17-cv-1810,
2019 WL 2024504, at *13 (S.D.N.Y. May 7, 2019) ("An employee who
has been repeatedly reprimanded and who sees the writing on the
wall cannot shield herself from legitimate managerial
prerogatives by threatening a discrimination complaint and then
alleging unlawful retaliation.").

Moreover, the defendants have provided legitimate, non-
retaliatory justifications for the counseling memoranda, the
decision to bring charges in the June 2017 and May 2019 Local
Disciplinary Hearings and the General Trial, and the outcomes of

the May 2019 Local Disciplinary Hearing and the General Trial,
and the plaintiff has failed to show any genuine issues of
material fact to show that the justifications were pretextual.
Because the relevant inquiry is not whether the performance-
based justifications for the challenged actions were "accurate,"
but rather whether the plaintiff can show any evidence that the
offered justifications were pretextual, the plaintiff cannot
demonstrate the necessary causal nexus for a retaliation claim
simply by providing conclusory disagreements with or denials of
the plaintiff's supervisors' negative assessment of her
performance.  Miller v. Nat'l Ass'n of Sec. Dealers, Inc., 703
F. Supp. 2d 230, 247 (E.D.N.Y. 2010). The defendants have
provided consistent explanations, supported by contemporaneous
evidence, over a gradual progression of adverse employment
actions against the plaintiff and her subsequent demotion. See,
e.g., Vitale, 2019 WL 2024504, at *13.

However, with respect to the outcome of the June 2017 Local
Disciplinary Hearing, the plaintiff has alleged that Wilson, the
Hearing Officer, told the plaintiff that the plaintiff "should
not have taken [the plaintiff's] little letter dated February 8,
2017 to the [Chair] Shola Olatoye." SAC ¶ 14; Williams Dep. 196-
199.  The NYCHA Defendants have argued that the comment is
inadmissible hearsay, but that is not correct.  The comment is
being offered as evidence of Wilson's state of mind and for the

fact that the statement was made, not to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c)(2). See, e.g., Kaur v. New York City Health & Hosps. Corp., 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010) (employee's personnel documents were admissible to show the "state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff"); Pilgrim v. McGraw-Hill Companies, Inc., 599 F. Supp. 2d 462, 476-77 (S.D.N.Y. 2009) (testimony about alleged discriminatory comments by hiring manager were not hearsay).

Nor can such a comment be dismissed as an irrelevant or stray remark.  The Court of Appeals has noted that courts consider four factors, when assessing the probativeness of verbal remarks in employment discrimination suits: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010).

In this case, all four factors emphasize the probativeness of Wilson's remark. The remark was allegedly made by the neutral

Hearing Officer, at the plaintiff's June 2017 Local Disciplinary
Hearing, shortly after Wilson made a decision adverse to the
plaintiff, and the remark made specific reference to an earlier
statement by the plaintiff, that included allegations of gender
discrimination. If credited, the comment would be the very type
of "actions or remarks made by decisionmakers that could be
viewed as reflecting a [retaliatory] animus." Chertkova v.
Connecticut Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996);
see also Azar v. TGI Friday's, Inc., 945 F. Supp. 485, 499
(E.D.N.Y. 1996) (derogatory comment about plaintiff's national
origin did not constitute a "stray remark" when made by
plaintiff's supervisor). Thus, the remark is sufficient to give
rise to an inference of retaliation required for the plaintiff
to establish a prima facie case, with respect to the decision in
the June 2017 Local Disciplinary Hearing. Although the
defendants have offered non-retaliatory justifications to
support the decision to bring the charges against the plaintiff
for the June 2017 Local Disciplinary Hearing, and Wilson's
written decision draws support from evidence presented, genuine
issues of fact exist regarding whether Wilson's justifications
for her decision at the June 2017 were pretextual. To the extent
that the defendants have sought to cast doubt on the credibility
of the plaintiff's account, such efforts are unavailing, because
"[a]ssessments of credibility and choices between conflicting

versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

Nevertheless, the plaintiff's allegations regarding Wilson's comment only relate to the outcome of the June 2017 Local Disciplinary Hearing, and there is no evidence that any of the individual defendants in this suit were responsible for the outcome of the June 2017 Local Disciplinary Hearing. For example, the plaintiff has not alleged facts or proffered evidence to suggest that Hoffman was aware of the February 2017 Letter, or that it somehow influenced his decision to bring the charges against the plaintiff for the June 2017 Local Disciplinary Hearing. Therefore, the plaintiff's allegations of Wilson's remark are not sufficient to demonstrate genuine issues of material fact for the plaintiff's claims against any of the individual defendants in this suit.

Further, the plaintiff has not alleged facts or proffered evidence to support a claim against NYCHA, under Monell.  The plaintiff has not provided evidence of a pattern or custom of retaliation, nor has the plaintiff alleged the involvement of sufficiently senior policymakers at NYCHA.  Therefore, the plaintiff's allegations of Wilson's comment are insufficient to support a Section 1983 retaliation claim against NYCHA.

Moreover, neither Wilson's alleged comment, nor the
February 2017 Letter made any reference to the plaintiff's race.
Thus, the plaintiff has only demonstrated genuine issues of
material fact sufficient to preclude summary judgment for the
plaintiff's Title VII retaliation claim for complaining about
discrimination on the basis of gender, not race.

Therefore, the plaintiff has demonstrated that genuine
issues of material fact exist that preclude summary judgment on
the plaintiff's Title VII retaliation claim against NYCHA, on
the basis of June 2017 Local Disciplinary Hearing decision, for
allegedly complaining about alleged gender discrimination.
However, in all other respects, the plaintiff has failed to meet
the burden required for her retaliation claims under Title VII
or Section 1983.  NYCHA is entitled to summary judgment on the
plaintiff's Section 1983 retaliation claim, and the individual
defendants (Jasper, Gonzalez, Hoffman, Davis, and Watkins) are
entitled to summary judgment for the plaintiff's Title VII and
Section 1983 retaliation claims.

### E. NYSHRL Claims

NYSHRL discrimination and retaliation claims are analyzed
under the same McDonnell Douglas burden-shifting framework as
Title VII claims. Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74-
75 (2d Cir. 2016) (discrimination); Zann Kwan v. Andalex Grp.
LLC, 737 F.3d 834, 843 (2d Cir. 2013) (retaliation). Prior to

57

amendments made to the NYSHRL that took effect on October 11, 2019, NYSHRL hostile environment claims were analyzed in essentially the same manner as hostile work environment claims under Title VII and Section 1983. Summa v. Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013).

For hostile work environment claims that occurred after the 2019 amendment's effective date, the standard has changed "to eliminate the requirement that harassing or discriminatory conduct be 'severe or pervasive' for it to be actionable and to adopt instead a more protective standard that prohibits conduct that results in 'inferior terms, conditions or privileges of employment.'" Maiurano v. Cantor Fitzgerald Sec., No. 19-cv-10042, 2021 WL 76410, at *3 & n.2 (S.D.N.Y. Jan. 8, 2021) (quoting N.Y. Exec. Law § 296(1)(h)).

In this case, the plaintiff has failed to demonstrate either that she was treated in a discriminatory manner on the basis of her race or gender, or that she was exposed to a hostile work environment, under either standard.  With respect to the plaintiff's hostile environment claim, the majority of the challenged events occurred before the amendment took effect on October 11, 2019, and thus are analyzed in the same manner as the plaintiff's federal hostile work environment claims; and the plaintiff has failed to demonstrate the presence of objectively hostile or unreasonable conditions. Further, to the extent that

claims occurred after October 11, 2019, the plaintiff has failed to demonstrate the presence of a hostile work environment that resulted in "inferior terms, conditions or privileges of employment." N.Y.S. Exec. Law § 296(1)(h).

With respect to the plaintiff's retaliation claims, for substantially the same reasons as noted above for the plaintiff's Title VII retaliation claims, the plaintiff has proffered sufficient evidence to preclude summary judgment for her NYSHRL retaliation claim against NYCHA, on the basis of Wilson's remark at the June 2017 Local Disciplinary Hearing. However, no reasonable jury could find that the plaintiff has provided sufficient evidence to support a NYSHRL claim against NYCHA on any other grounds.

Therefore, Watkins and the individual NYCHA Defendants (Jasper, Gonzalez, Hoffman, and Davis) are entitled to summary judgment dismissing the plaintiff's NYSHRL claim.  However, the plaintiff has provided sufficient evidence to preclude summary judgment for the plaintiff's NYSHRL claim against NYCHA, but solely on the basis of Wilson's decision at the June 2017 Local Disciplinary Hearing in alleged retaliation for the plaintiff's complaint about gender discrimination.

### F. NYCHRL Claims

Section 8-107(1)(a) of the NYCHRL prohibits employers from discriminating against any person on the basis of the person's

actual or perceived race or gender "in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a). Section 8-107(7) prohibits an employer from taking retaliatory actions against a plaintiff, that would be "reasonably likely to deter a person from engaging in protected activity," for opposing practices prohibited by the NYCHRL. N.Y.C. Admin. Code § 8-107(7). See Ya-Chen Chen v. City Univ. of New York, 805 F.3d 59, 76 (2d Cir. 2015). Courts must analyze NYCHRL claims separately from any federal and state law claims and should construe the NYCHRL "liberally for the accomplishment of the uniquely broad and remedial purposes thereof." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).

"The NYCHRL does not differentiate between discrimination and hostile work environment claims; rather, both are governed by N.Y.C. Admin. Code § 8-107(1)(a)." Russo, 972 F. Supp. 2d at 449-50. To show a violation of Section 8-107(1)(a), a plaintiff must establish that the plaintiff was treated "less well" than other similarly situated employees "at least in part for discriminatory reasons." EEOC v. Bloomberg LLP, 967 F. Supp. 2d 816, 836 (S.D.N.Y. 2013); Mihalik, 715 F.3d at 110. For NYCHRL claims based on the existence of a hostile work environment, "less egregious conduct than that required under Title VII may support a hostile work environment claim under the NYCHRL."

Panzarino v. Deloitte & Touche LLP, No. 05-cv-8502, 2009 WL
3539685, at *9 (S.D.N.Y. Oct. 29, 2009); see also Fincher v.
Depository Tr. & Clearing Corp., 604 F.3d 712, 724 & n.10 (2d
Cir. 2010).  However, the "broader purposes of the NYCHRL do not
connote an intention that the law operate as a general civility
code." Zhao v. Time, No. 08-cv-8872, 2010 WL 3377498, at *23
(S.D.N.Y. Aug. 24, 2010), aff'd, 440 F. App'x 50 (2d Cir. 2011).
Summary judgment is available where the employer can prove that
the alleged conduct does not even represent a "borderline"
violation, but "could only be reasonably interpreted by a trier
of fact as representing no more than petty slights or trivial
inconveniences." Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d
27, 41 (App. Div. 2009); see also Thelwell v. City of New York,
No. 13-cv-1260, 2015 WL 4545881, at *11-*12 (S.D.N.Y. July 28,
2015), aff'd, 733 F. App'x 561 (2d Cir. 2018).

To establish a retaliation claim under the NYCHRL, "a
plaintiff must show (1) that she took action opposing her
employer's discrimination and (2) that, as a result, the
employer engaged in conduct that was reasonably likely to deter
a person from engaging in such an action." Bloomberg, 967 F.
Supp. 2d at 838; See also Mihalik, 715 F.3d at 112.  Although
NYCHRL retaliations claims are not held to a "but-for" standard,
"a plaintiff must still establish that there was a causal
connection between [the plaintiff's] protected activity and the

employer's subsequent action, and must show that a defendant's legitimate reason for [the adverse employment action] was pretextual or motivated at least in part by an impermissible motive." Russo, 972 F. Supp. 2d at 456.

In this case, for the reasons discussed above with respect to the plaintiff's Title VII and NYSHRL retaliation claims, genuine issues of material fact preclude the NYCHA Defendants' motion for summary judgment on the plaintiff's NYCHRL claim against NYCHA, based on the plaintiff's allegations of retaliation by Wilson at the June 2017 Local Disciplinary Hearing, for complaining about gender discrimination in the February 2017 Letter.  However, for substantially the same reasons that the defendants are entitled to summary judgment for the plaintiff's remaining Title VII, Section 1983, and NYSHRL claims, there is insufficient evidence in the record to support a disparate treatment, retaliation, or hostile work environment NYCHRL claim, on the basis of any of the plaintiff's other allegations.

Therefore, Watkins and the individual NYCHA Defendants (Jasper, Gonzalez, Hoffman, and Davis) are entitled to summary judgment dismissing the plaintiff's NYCHRL claims against them, but NYCHA's motion for summary judgment dismissing the plaintiff's NYCHRL claim against NYCHA is denied solely with

respect to the plaintiff's claim for retaliation based on the June 2017 Local Disciplinary Hearing decision.

## IV. First Amendment Retaliation Claim

The plaintiff has brought a claim pursuant to Section 1983, alleging that she was retaliated against for engaging in "speech" that the plaintiff contends is protected by the First Amendment.  Specifically, the plaintiff alleges that she suffered retaliation for her February 2017 Letter to Local 237 President Floyd, NYCHA Chair Olatoye, and other state and federal officials.

"A plaintiff asserting a First Amendment retaliation claim must establish that: (1) [the plaintiff's] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [the plaintiff]; and (3) there was a causal connection between this adverse action and the protected speech." Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015)).

As noted above, the plaintiff has failed to demonstrate that several of the challenged actions were "adverse actions." In any event, because the plaintiff has failed to show that the February 2017 Letter was protected by the First Amendment, the plaintiff's First Amendment Retaliation claim fails.

Whether an employee's speech was protected by the First Amendment is a question of law to be decided by the Court. Rao

v. N.Y.C. Health & Hosps. Corp., 905 F. Supp. 1236, 1241
(S.D.N.Y. 1995).  The Supreme Court has established a two-step
inquiry, to analyze whether a public employee's speech is
entitled to First Amendment protection. Lane v. Franks, 573 U.S.
228, 236-37 (2014).  First, the Court must determine "whether
the employee spoke as a citizen on a matter of public concern."
Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citing Pickering
v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., 391
U.S. 563, 568 (1968)). Whether a public employee spoke as a
citizen on a matter of public concern in turn encompasses two
separate subquestions: "(1) whether the subject of the
employee's speech was a matter of public concern and (2) whether
the employee spoke as a citizen rather than solely as an
employee." Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011)
(citing Garcetti, 547 U.S. at 420-22). Only if the Court answers
both questions in the affirmative does the Court turn to the
second step of the Pickering framework to determine: "whether
the relevant government entity had an adequate justification for
treating the employee differently from any other member of the
public based on the government's needs as an employer."
Matthews, 779 F.3d at 172; see also Pickering, 391 U.S. at 568.

     To determine whether an employee's speech related to a
matter of public concern, courts are instructed to consider
whether the speech in question "was calculated to redress

personal grievances" or directed toward "a broader public
purpose." Paterno v. City of New York, 781 F. App'x 15, 17 (2d
Cir. 2019) (quoting Lewis v. Cowen, 165 F.3d 154, 163-64 (2d
Cir. 1999), cert. denied, 140 S. Ct. 499 (2019). Whether speech
is a matter of public concern depends on the "content, form, and
context" of the speech. Connick v. Myers, 461 U.S. 138, 147-148.
See also Montero v. City of Yonkers, 890 F.3d 386, 399-400 (2d
Cir. 2018).

In this case, the plaintiff's February 2017 Letter is
comprised almost solely of complaints about the plaintiff's
interactions with her managers, and NYCHA Deputy Directors and
Administrators.  Although, as the Superintendent of a large
NYCHA development, the plaintiff's concerns about lack of
adequate resources have implications for the living situations
of a significant number of New York City residents, the
"content, form, and context" of the plaintiff's letter make
clear that it was not written with such a public purpose.  The
plaintiff's complaints that NYCHA "failed to provide [her]" with
resources, that her manager "failed to brief, appraise and
provide [her] with adequate staffing" and that "[i]n meeting,
[her] development . . . is criticized, scrutinized and adversely
spoken about." Lippman Decl. Ex. 15.  Such speech is focused on
individualized grievances with the conditions of the plaintiff's
work, not aimed toward serving a broader public purpose. See

Ruotolo v. City of N.Y., 514 F.3d 184, 190 (2d Cir. 2008) ("[a] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run").

Moreover, because the February 2017 Letter was inextricably connected to the plaintiff's concerns about the plaintiff's ability to execute her job responsibilities properly, it was speech as an employee, not as a citizen. To determine whether the employee spoke as a citizen rather than solely as an employee, courts are instructed to ask two subquestions: "(A) did the speech fall outside of the employee's official responsibilities [or duties], and (B) does a civilian analogue exist?" Matthews, 779 F.3d at 173; see also Eyshinskiy v. Kendall, 692 F. App'x 677, 678 (2d Cir. 2017).  To determine whether speech falls outside an employee's official duties, a court "must examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two." Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012). A public employee' speech is not protected if it is "part-and-parcel of [the employee's] concerns about his ability to properly execute his duties." Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196, 203 (2d Cir. 2010).

In this case, the plaintiff's speech directly relates to matters for which the plaintiff had management responsibilities, as the Superintendent of Pomonok. As such, the plaintiff's February 2017 Letter did not involve the plaintiff's speech as a citizen, but rather involved speech that was "part-and-parcel" of the plaintiff's responsibilities as the Superintendent of Pomonok.[16]

Moreover, "[a]lthough the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen, the critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties." Montero, 890 F.3d at 397-98.  Indeed, even in contexts where the plaintiff used a channel for speech that may have been available to citizens, courts have still found that the plaintiff's speech was as an employee, when it relates to the plaintiff's official employment duties and responsibilities. See, e.g., Waronker v. Hempstead Union Free

---

[16]  The fact that the plaintiff's letter was sent to the president of her union, in addition to Chair Olatoye and other state and local politicians, does not alter the analysis. It is true that the Court of Appeals has recognized that certain speech conducted in union fora may be protected by the First Amendment as private citizen speech. See, e.g., Montero, 890 F.3d at 394. Nevertheless, the Court of Appeals has declined to "decide categorically that when a person speaks in his capacity as a union member, he speaks as a private citizen," and instead instructed that a court must consider whether, under the facts of the case, the speech was "composed of statements made as a means to fulfill or undertaken in the course of performing" the plaintiff's job responsibilities. Id. at 399. See, e.g., Weintraub, 593 F.3d at 203 (a school teacher's grievance regarding administration's refusal to discipline a student was unprotected speech, because the teacher's need to discipline his own students was essential to his ability to perform his job responsibilities).

Sch. Dist., 788 F. App'x 788, 792-93 (2d Cir. 2019) (affirming a district court's conclusion that a school superintendent spoke as an employee, rather than as a private citizen, when he publicly accused the school district of corruption, because he "did not bear an obligation as a private citizen to communicate with law enforcement about the School District's corruption and mismanagement."), cert. denied, 140 S. Ct. 2669 (2020); Weintraub, 593 F.3d at 203 (holding that when a public school teacher challenged the school administration's decision to not discipline a student in his class, the plaintiff spoke "pursuant to his official duties because it was part-and-parcel of his concerns about his ability to properly execute his duties").

Because the plaintiff's February 2017 Letter was a "means to fulfill" the plaintiff's primary employment responsibilities of managing and overseeing the maintenance of Pomonok, the February 2017 Letter was employee speech, rather than citizen speech, and not protected by the First Amendment. Weintraub, 593 F.3d at 203.

Therefore, the defendants are entitled to summary judgment dismissing the plaintiff's First Amendment retaliation claims.[17]

---

[17] Furthermore, the plaintiff has failed to allege facts or proffer evidence sufficient to support a Section 1983 claim against NYCHA under Monell. See Batista, 702 F.2d at 397; Chin, 575 F. Supp. 2d at 565-67.

## IV. Preliminary Injunction

The plaintiff has filed a motion for a preliminary injunction, seeking reinstatement to the title of Resident Buildings Superintendent, and alleging that NYCHA denied her due process rights by confirming the General Trial Officer's findings and decisions, without issuing its own separate record or a signed "explanation." See ECF No. 135. It is uncontested that NYCHA published a "DECISION RELATING TO DISCIPLINARY CHARGES," which stated that "the Disciplinary Panel of [NYCHA] has reviewed the record of the hearing, the findings and the report and recommendation of the Trial Officer," "confirmed" the findings and decision, and "approved and adopted" the Trial Officer's recommendations. See ECF No. 135, Ex. 2; NYCHA Defs.' 56.1 Stmt. ¶ 116; Lippman Decl. Ex. 20. The plaintiff also alleges that she cannot pursue an appeal of the demotion and that the preliminary injunction is her only recourse.

However, the plaintiff has failed to demonstrate that she is likely to succeed on the merits of her claims. The plaintiff has also failed to show irreparable harm and that a preliminary injunction would be in the public interest.

A preliminary injunction is "one of the most drastic tools in the arsenal of judicial remedies," Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam), and "never awarded as of right." Winter v. Nat. Res.

69

Def. Council, Inc., 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must generally establish that the plaintiff is likely to succeed on the merits, that the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that an injunction is in the public interest. Winter, 555 U.S. at 20. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009).

In this case, the plaintiff has moved for a preliminary injunction not on the basis of claims of discrimination, hostile environment, or retaliation, but on a claim that the General Trial and NYCHA's adoption of the findings and recommendations of the General Trial Officer, violated the plaintiff's due process rights. The plaintiff's preliminary injunction and supporting papers raise claims and allegations not found in the SAC, and indeed would form the basis of a new, separate complaint. In support, the plaintiff alleges that NYCHA merely "rubber stamp[ed]" the General Trial Officer's decision and that this is unlawful. ECF No. 135, at 2.

First, the plaintiff has offered no legal support for her contention that NYCHA was required to hold a new hearing or provide a lengthy signed decision, instead of its summary

affirmance, and therefore the plaintiff has failed to show a likelihood of success on the merits.  The plaintiff's General Trial, for which the plaintiff received advance notice, at which she was represented by counsel, and at which she had an opportunity to present witnesses and evidence, would appear to satisfy the plaintiff's rights to procedural due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985); see also Faghri v. Univ. of Connecticut, 621 F.3d 92, 100 (2d Cir. 2010).

Moreover, as the NYCHA Defendants note, the plaintiff has already appealed her demotion to the New York City Civil Service Commission ("CSC") with the assistance of counsel and is awaiting the CSC's decision. Lippman Preliminary Injunction Opposition Decl. ¶¶ 2-4; Exs. 1 & 2.  The plaintiff has alleged that the CSC is an inadequate forum for challenging her demotion.

Furthermore, the plaintiff has failed to allege any harms for which the plaintiff would lack an adequate remedy at law at a later time, in the form of money damages. The plaintiff has failed to explain why compensatory damages would be inadequate, if the plaintiff successfully challenges her demotion.[18] See,

---

[18]   The plaintiff appears to rely on Bery v. City of New York, 97 F.3d 689, 693-94 (2d Cir. 1996), to argue that the plaintiff need not demonstrate an irreparable injury.  But, Bery involved a First Amendment claim, and the plaintiff's preliminary injunction motion raises allegations of a violation of the plaintiff's rights to procedural due process under the Fourteenth

e.g., JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d
Cir. 1990)(" Where money damages are adequate compensation a
preliminary injunction should not issue."); Jackson Dairy, Inc.
v. H. P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per
curiam) ("For it has always been true . . . that where money
damages is adequate compensation a preliminary injunction will
not issue."). Therefore, the plaintiff has failed to
demonstrate any "irreparable injury" if an injunction is not
granted at this time.

Finally, the plaintiff has failed to demonstrate that the
balance of equities tip in her favor or that an injunction would
be in the public interest. The plaintiff was demoted, because
of serious management failures in supervising public housing.
The public has a strong interest in assuring the efficient
provision of safe, decent public housing. Based on the
plaintiff's allegations and the current record, reinstating the
plaintiff before the CSC can decide her appeal from the finding
of mismanagement would not be in the public interest.

Because the plaintiff has failed to demonstrate a
likelihood of success on the merits, that she would be

---

Amendment, not a First Amendment violation. Moreover, "the presence of
irreparable injury to First Amendment rights, however, 'turns on whether the
plaintiff has shown a clear likelihood of success on the merits,' SAM Party
of New York v. Kosinski, 987 F.3d 267, 278 (2d Cir. 2021), and, as discussed
above, the plaintiff has failed to demonstrate that any adverse action was
taken against her, on the basis of any First Amendment-protected speech.

irreparably harmed absent relief from this Court at this time, or that the equities and public interest weigh in the plaintiff's favor, the plaintiff's request for a preliminary injunction is denied.

### CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, defendant Watkins' motion for summary judgment dismissing the plaintiff's claims against her is **GRANTED**. The NYCHA Defendants' motion for summary judgment is **DENIED** with respect to the plaintiff's claims against NYCHA, pursuant to Title VII, NYSHRL, and NYCHRL, for retaliation for complaining about alleged gender discrimination in her February 2017 Letter and **GRANTED in all other respects.**   The plaintiff's motion for a preliminary injunction is **DENIED**.   Defendant Watkins' cross-claims against NYCHA are unaffected. The Clerk is directed to close all pending motions.


**SO ORDERED.**

Dated:   New York, New York
         March 23, 2021          _____/s/ John G. Koeltl_____
                                      John G. Koeltl
                               **United States District Judge**

73